**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**CORBEY JONES**                                                    **PLAINTIFF**

**VERSUS**                                    Civil Action No. 2:22-cv-93-KS-MTP

**JONES COUNTY, MS; SHERIFF JOE
BERLIN; DEPUTY JAMES MANN; SGT.
JESSE JAMES; DEPUTY COLTON
DENNIS; CAROL JOHNSTON;
JANET HENDERSON; AND
DEPUTY MEKEDES COLEMAN,**                              **DEFENDANTS**

**JONES COUNTY, MS, SHERIFF JOE BERLIN, AND
JENNIFER HENDERSON'S MEMORANDUM OF AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS FOR LACK OF STANDING**

Come now Jones County, MS, Sheriff Joe Berlin, and Jennifer Henderson (collectively "Movants"), by and through counsel, and, pursuant to Rule 12 of the Federal Rules of Civil Procedure, submit their Memorandum of Authorities in support of Motion to Dismiss for Lack of Standing, as follows:

**INTRODUCTION**

Andrew Wesley Jones ("Andrew" or "Decedent") died on  January 9, 2021, while incarcerated as a pre-trial detainee at the Jones County Adult Detention Center ("JCADC") in Ellisville, MS. Decedent's father, Plaintiff Corbey Jones, seeks relief under 42 U.S.C. § 1983 for alleged violations of Decedent's constitutional rights.

This Court, however, lacks jurisdiction over this matter due to Plaintiff's lack of (1) prudential, or statutory/merits-question, standing; and (2) Article III jurisdictional standing. The Court, therefore, must dismiss Plaintiff's claims.

## NATURE OF THE CASE

Although Plaintiff's First Amended Complaint [52] ("Pleading") never explicitly says so, this appears to be an action for wrongful death pursuant to Miss. Code Ann. § 11-7-13, which Plaintiff attempts to bring to this Court through 42 U.S.C. §§ 1983 and 1988.

Section "1988 incorporates the forum state's wrongful death statute to § 1983 civil action." *Barrett v. City of Pelahatchie*, No. 3:21-cv-124-HTW-LGI, 2023 WL 2562992, at *2 (S.D. Miss. Mar. 17, 2023) (citing *Rhyne v. Henderson Cnty.*, 973 F.2d 386 (5th Cir. 1992)). To be sure, "[f]or constitutional claims pursued under 42 U.S.C. § 1983 for an alleged wrongful death in Mississippi, 42 U.S.C. § 1988 directs the court to look to state law for guidance on matters such [as] who may pursue the claim." *Ivy v. Mississippi Dep't of Corr.*, No. 4:20-cv-173-DMB-JMV, 2022 WL 570451, at *1 (N.D. Miss. Feb. 24, 2022). The relevant state law here is Mississippi's wrongful death statute, § 11-7-13.

"In order to have statutory standing to bring a [Section] 1983 claim on behalf of another, a plaintiff 'must have standing under the state wrongful death or survival statutes." *Martin v. Boykin*, No. 1:16-cv-00187-GHD-DAS, 2017 WL 3896677, at *2 (N.D. Miss. Sept. 6, 2017) (quoting *Walker v. New Orleans City*, 701 F. App'x 359, 361 (5th Cir. 2017), *opinion withdrawn* (Aug. 25, 2017), *superseded*, 709 F. App'x 303 (5th Cir. 2018)). Significantly, a "party must have standing at the time the complaint is filed." *Royal v. Boykin*, No. 1:16-cv-00176-GHD-RP, 2017 WL 3897168, at *2 (N.D. Miss. Sept. 6, 2017) (citing *Pluet v. Frasier*, 355 F. 3d 381, 383 (5th Cir. 2004)).

Section 11-7-3 of the Mississippi Code allows a parent to seek wrongful death damages for the death of a child, which appears to be the applicable jurisdictional claim in this case: Plaintiff seeks damages for constitutional claims Decedent could have brought for himself had death not ensued. In brief, Plaintiff seeks relief for the following:

1.   Alleged denial and/or deprivation of Decedent's right to (a) a reasonably safe and secure place of detention; (b) reasonable and adequate medical care; (c) the right to be free from cruel and unusual punishment; and (d) the right to due process and equal protection of the laws as protected by the Fourteenth Amendment. *Am. Compl.* [52] at 18 (¶ 80);

2.   Attribution of the above violations to Jones County, MS, Sheriff Berlin, Henderson, and Carol Johnston as related to their alleged actions of establishing, condoning, ratifying, and encouraging "customs, policies, patterns, and practices that directly and proximately caused the deprivation of the civil and constitutional rights **of the deceased**, as alleged herein . . . ." *Id*. at 18-19 (¶ 82) (emphasis added); and

3.   Alleged violations of the Americans with Disabilities Act ("ADA"), to wit: (1) an ADA claim for failure to reasonable accommodate Decedent's needs in the JCADC; and (2) a Section 504[1] of the ADA's Rehabilitation Act claim for denial of services to Decedent. *Id*. at 19-20 (¶¶ 83-89).

Plaintiff, however, **never** asserts any violation of his own constitutional rights nor does he allege that he has been injured in any specific way. The only paragraph of Plaintiff's Pleading that infers Plaintiff may have incurred damages merely states:

As a result of the actions of the Defendants as described above, damages have been incurred for the pre-death suffering of Andrew Jones and for the wrongful death of Andrew Jones.

---

[1] 29 U.S.C. § 794.

*Id*. at 20 (¶ 90). At this point, it is important to briefly discuss the cause of Decedent's death.

"Based on a test conducted in late October 2020, Andrew was diagnosed as positive for HIV on November 5, 2020." *Id*. at 5 (¶ 11). Thirty-five (35) days later, Andrew booked into JCADC on December 9, 2020." He died thirty-one (31) days later.

On January 12, 2021, the Office of the State Medical Examiner ("OSME") "opined that **the cause of death** was HIV infection." *Id*. at 15 (¶ 70) (emphasis added). Significantly, the OSME only performed an External Postmortem Examination ("OSME Report"). *See OSME Report*.[2] In other words, the OSME did not perform a complete autopsy, and no other cause of death was specified.

As demonstrated further below, Plaintiff lacks standing to bring the claims raised in his Pleading to this Court for its consideration of the same.

## STANDARD OF REVIEW

Courts apply Rule 12(b)(1) or (6) dismissal standards to Rule 12(c) motions for judgment on the pleadings. *Hoyle v. City of Hernando, Mississippi*, No. 3:21-cv-00171-NBB-RP, 2022 WL 4486997, at *2 (N.D. Miss. Sept. 27, 2022) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n.8 (5th Cir. 2002)). A court's Rule 12(c) task is to determine whether a plaintiff's complaint "states a valid claim for relief." *Troice v. Greenberg Traurig, L.L.P.*, 921 F.3d 501, 504 (5th Cir. 2019).

---

[2] Plaintiff has incorporated the OSME's Report into his First Amended Complaint by reference. As such, this Court may properly consider the Report in the Rule 12 context, and Movants respectfully request the Court to do so. *See*. n.4 (*infra*).

"When a Rule 12(b)(1) motion is filed in conjunction with a Rule 12(b)(6) motion, [as is the case here,] courts must consider the jurisdictional challenge first." *McCasland v. City of Castroville*, 478 F. App'x 860, 860 n.1 (5th Cir. 2012) (citing *Wolcott v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011)).

## I.      RULE 12(b)(1)

"Motions to dismiss for lack of standing are governed by Federal Rule of Civil Procedure 12(b)(1)." *Alexander v. Hall*, No. 4:20-cv-21-DMB-JMV, 2021 WL 800840, at *2 (N.D. Miss. Mar. 2, 2021) (citing *Moore v. Bryant*, 853 F.3d 245, 248 (5th Cir. 2017)). More specifically, "[a] Rule 12(b)(1) motion allows a party to challenge the Court's subject matter jurisdiction." *Wheeler v. Wiliams*, No. 4:17-cv-96-SA-JMV, 2018 WL 6204444, at *2 (N.D. Miss. Nov. 27, 2018). "An argument that a plaintiff lacks Article III standing is an attack on the court's subject matter jurisdiction." *Norwood v. United Med. Recovery*, LLC, No. 4:21-cv-134-DMB-JMV, 2022 WL 4088081, at *1 (N.D. Miss. Sept. 6, 2022)).

"A motion to dismiss for lack of standing may be either 'facial' or 'factual.' An attack is 'factual' rather than 'facial' if the defendant 'submits affidavits, testimony, or other evidentiary materials.'" *Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (quoting *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)). "A facial attack is based solely upon the complaint itself, whereas '[a] "factual attack" ... challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings.'" *Geiger v. Monroe Cnty., Mississippi*, No. 1:16-cv-95-DMB-DAS, 2022 WL 4467656, at *2 (N.D. Miss. Sept. 26, 2022) (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).

"When the party challenging jurisdiction has not submitted evidence in support of its Rule 12(b)(1) motion to dismiss, the motion is a facial attack on plaintiffs' pleadings, and the court's review is limited to whether the complaint sufficiently alleges jurisdiction." *Prescott v. Bexar Cnty.*, No. SA-19-cv-1392-JKP-RBF, 2021 WL 812115, at *1 (W.D. Tex. Mar. 3, 2021) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)). "Where ... the movant mounts a 'facial attack' on jurisdiction based only on the allegations in the complaint, the court simply considers the sufficiency of the allegations in the complaint because they are presumed to be true." *Lee v. Verizon Comm'ns, Inc.*, 837 F.3d 523, 533 (5th Cir. 2016).

But "when 'the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case under either Rule 12(b)(6) or Rule 56.'" *Alexander*, 2021 WL 800840, at *2 (quoting *Montez v. Dep't of the Navy*, 392 F.3d 147, 150 (5th Cir. 2004)).

Significantly, "a factual attack under Rule 12(b)(1) **may occur at any stage of the proceedings**, and plaintiff bears the burden of proof that jurisdiction does in fact exist." *Wheeler*, 2018 WL 6204444, at *2 (quoting *Arena v. Graybar Elec. Co.*, 669 F.3d 214, 223 (5th Cir. 2012)) (emphasis added; brackets, citations, and quotations omitted). "In ruling on a Rule 12(b)(1) motion to dismiss, the Court can consider: '(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Id.* (quoting *Tsolmon v. United States*, 841 F.3d 378, 382 (5th Cir. 2016)).

6

## II.      RULE 12(b)(6)

"When deciding a Rule 12(b)(6) motion to dismiss, the Court is limited to the allegations set forth in the complaint and any documents attached to the complaint." *Wheeler*, 2018 WL 6204444, at *3 (citing *Walker v. Webco Indus., Inc.*, 562 Fed. Appx. 215, 216–17 (5th Cir. 2014) (per curiam)). "To survive a motion to dismiss under Rule 12(b)(6), the 'complaint[3] must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Tilman v. Clarke Cty.*, 514 F. Supp. 3d 884, 889 (S.D. Miss. 2021) (quoting *Great Lakes Dredge & Dock Co. LLC v. La. State*, 624 F.3d 201, 210 (5th Cir. 2010)).

"To be plausible, the complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Great Lakes Dredge*, 624 F.3d at 210. "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 234)).

---

3 "Although a district court primarily looks to the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, there are other sources it may consider." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (per curiam). "For example, a district court may take into account documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned. *Id.* (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

III.     **RULE 12(c)**

"A party may move for judgment under Rule 12(c) '[a]fter the pleadings are closed

... but early enough not to delay trial.'" *McZeal v. Louisiana*, No. 21-30631, 2022 WL

4078582, at *3 (5th Cir. Sept. 6, 2022) (quoting Fed. R. Civ. P. 12(c)). "A motion for

judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion

to dismiss under Rule 12(b)(6)." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)

(citing *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004)). As with Rule 12(b)(6) motions,

"'t]he central issue is whether, in the light most favorable to the plaintiff, the complaint

states a valid claim for relief.'" *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001)

(quoting *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n. 8 (5th Cir. 2000)).

Significantly, "the analysis [for Rules 12(b)(1), 12(b)(6), and 12(c)] is functionally

the same. The critical issue is whether the complaint contains 'sufficient factual matter,

accepted as true, to "state a claim to relief that is plausible on its face."'" *Doe v. Bd. of*

*Supervisors of Univ. of Louisiana Sys.*, No. 22-00338-BAJ-SDJ, 2023 WL 143171, at *8 (M.D.

La. Jan. 10, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d

868 (2009)) (citations omitted). "If there are insufficient factual allegations to raise a right

to relief above the speculative level, **the claim must be dismissed**." *Tate v. Lafayette Cnty.*

*Miss.*, No. 1:11-cv-00204, 2012 WL 6454579, at *1 (N.D. Miss. Dec. 13, 2012).

## **ARGUMENT**

Corbey Jones—the only captioned-Plaintiff in this case—is not the real party in

interest for claims raised in his Pleading on Decedent's behalf, nor does he have Article

III standing to even raise those claims. Notably absent from Plaintiff's Pleading is the

Estate of Andrew Wesley Jones, Deceased. In fact, Plaintiff's First Amended Complaint never mentions the existence of any such Estate. This obviously demonstrates that Plaintiff did not file suit as an administrator, executor, or personal representative of the Estate of Andrew Wesley Jones, Deceased.

The absence of Decedent's Estate fatally affects Plaintiff's ability to prosecute his claims in this Court, because without Decedent's Estate, Plaintiff cannot maintain Decedent's survival claims.

"Mississippi's survival statute, Miss. Code Ann. § 91-7-233 . . . allows personal actions of a decedent to be pursued after his death." *Wilks v. Am. Tobacco Co.*, 680 So.2d 839, 843 (Miss. 1996). Significantly, "[u]nder Mississippi's general survivorship statute, **only** executors, administrators, and temporary administrators [of a decedent's estate] may bring a survival action." *Phillips ex rel. Phillips v. Monroe Cnty., Miss.*, 311 F.3d 369, 374, n.1 (5th Cir. 2002) (citing Miss. Code Ann. § 91–7–233) (emphasis added). Since survival-type damages "are **<u>only</u> recoverable by or on behalf of the estate**, then only where an estate has been opened and administered through the chancery court may **any** wrongful death plaintiff **pursue** a claim for such damages. *Beal for & on Behalf of Beal v. Merit Health Cent.*, No. 3:20-cv-335-TSL-RPM, 2020 WL 11191722, at *3 (S.D. Miss. Nov. 10, 2020) (citing *Long v. McKinney*, 897 So.2d 160, 174 (Miss. 2004)) (emphasis added)).

Without the Estate, Plaintiff may only pursue a pure wrongful death action. "Wrongful death statutes 'create new causes of action on behalf of the **statutorily-designated persons** in order to compensate them for the death of the decedent,' when a defendant's conduct caused the decedent's death." *Spooner v. Floore*, No. 1:15-cv-109-

HSO-JCG, 2016 WL 3983677, at *3 (S.D. Miss. July 25, 2016) (quoting *Phillips*, 311 F.3d at 374) (emphasis added). Mississippi's wrongful death statute[4] "sets out three categories of potential claimants who may bring a wrongful death action: "(1) the personal representative on behalf of the estate and all other persons entitled to recover; (2) one of the wrongful death beneficiaries[5] on behalf of all persons entitled to recover; or (3) all interested parties." *Beal*, 2020 WL 11191722, at *3 (quoting *Clark Sand Co. v. Kelly*, 60 So.3d 149, 155 (Miss. 2011)) (cleaned up).

"[A]n action for wrongful death is generally intended to compensate beneficiaries for their **own injuries** suffered as a result of the death of the decedent. *Id.* (emphasis added). "The beneficiaries are entitled to recover for their respective claims of loss of society and companionship[, and [t]he wrongful death beneficiaries are entitled to recover the present net cash value of the decedent's continued existence." *Long*, 897 So.2d at 169.

> The Mississippi Supreme Court has held that wrongful death damages include (1) the present net cash value of the life expectancy of the deceased; (2) the loss of the companionship and society of the decedent; (3) the pain and suffering of the decedent between the time of injury and death; (4) funeral and medical expenses of the decedent; and (5) punitive damages.

*Spooner*, 2016 WL 3983677, at *4 (quoting *Laney v. Vance*, 112 So.3d 1079, 1081 (Miss. 2013)).

---

[4] Miss. Code Ann. § 11-7-13.

[5] Section 11-7-13's wrongful death beneficiaries include "all persons entitled under the law to recover," which includes widows, widowers, parents, children, and siblings. Miss. Code Ann. § 11-7-13.

True, "Mississippi's 'wrongful death' statute, despite being so denominated, '**encompasses all claims**—including survival claims which could have been brought by the decedent, wrongful-death claims, estate claims, and other claims—resulting from a tort which proximately caused a death.'" *Beal*, 2020 WL 11191722, at *3 (quoting *Caves v. Yarbrough*, 991 So.2d 142, 149–50 (Miss. 2008)). As explained in more detail below, however, *Phillips* and *Beal* demonstrate § 11-7-13 is not unfettered, *i.e.*, not without limitations. Rather, these cases—particularly *Phillips*—instruct § 11-7-13's scope is constrained by a plaintiff's pleadings because a claimant's legal status(es) dictate(s) which relief the claimant may seek under the wrongful death statute.

## I.   PLAINTIFF LACKS STANDING TO ASSERT CLAIMS IN THIS COURT

### A.   <u>Plaintiff lacks Prudential Standing</u>

To begin, this Court must first limit Plaintiff's claims to only those related to his own alleged injuries, not those of Decedent. Despite seeking vindication for alleged constitutional violations that Decedent could have brought for himself "had death not ensued," Plaintiff may only maintain a claim for the five (5) categories of wrongful death damages listed above. *See* Miss. Code Ann. § 11-7-13.

Significantly, Plaintiff did not file a separate survival action pursuant to Miss. Code Ann. § 91-7-233 inasmuch as Plaintiff filed suit in his name only, *i.e.*, not as an administrator, executor, or personal representative of the Estate of Andrew Wesley Jones, Deceased. In fact, Plaintiff's First Amended Complaint never mentions the existence of any such Estate. This case, therefore, may only proceed under Miss. Code Ann. § 11-7-13.

Even under that statute, however, Plaintiff's failure to demonstrate he is the personal representative of Decedent's Estate is fatal to Plaintiff's Pleading.

"Personal representative is defined as '[a] person who manages the legal affairs of another because of incapacity or death' and when it is used by a testator, the term refers to an executor or administrator of the estate." *Clark Sand Co. v. Kelly*, 60 So.3d 149, 154 (Miss. 2011) (quoting Black's Law Dictionary 1045 (abr. 7th ed. 2000)) (emphasis removed). "To have standing as a personal representative to bring a wrongful death action, **the plaintiff must be formally appointed as such <u>prior to</u>** filing the complaint for wrongful death." *Id*. at 155 (citing *Long v. McKinney*, 897 So. 2d 160, 174 (Miss. 2004)).

If "litigants wish to pursue a claim on behalf of the estate of the deceased, such estate must, of course, be opened and administered through the chancery court." *Long*, 897 So.2d at 174. On this issue, Movants respectfully request the Court look to matters of public record for verification that the Estate of Andrew Wesley Jones, Deceased, does not exist in the Chancery Court of Jones County, Mississippi.

Since no estate exists, the Court cannot consider Plaintiff as personal representative for all wrongful-death beneficiaries of Decedent. Thus, Plaintiff's suit is solely by virtue of his father-son relationship with the Decedent, which statutorily-qualifies Plaintiff as a wrongful death beneficiary pursuant to Miss. Code Ann. § 11-7-13.

In Mississippi, "[a]ny one or more persons in any one or more of the[] categories [of persons listed in § 11-7-13] may bring the action, and whoever brings the action may recover damages of every kind, including survival-type damages." *Beal for & on Behalf of Beal v. Merit Health Cent.*, No. 3:20-cv-335-TSL-RPM, 2020 WL 11191722, at *3 (S.D. Miss.

Nov. 10, 2020) (citing *Burley v. Douglas*, 26 So.3d 1013, 1018 (Miss. 2009)). Yet, "since [survival-type] damages are only recoverable by or on behalf of the estate, then only where an estate has been opened and administered through the chancery court may any wrongful death plaintiff pursue a claim for such damages." *Id.* (citing *Long*, 897 So.2d at 174).

In *Phillips*, the Fifth Circuit affirmed the United States District Court for the Northern District of Mississippi's judgment as a matter of law "because the plaintiff[6] failed to prove the necessary causal link between the Decedent's death and the acts or omissions of the defendants." 311 F.3d at 371. While the Fifth Circuit's ultimate resolution stemmed from the plaintiff's lack of causation—"no reasonable jury could have found for Phillips on the wrongful death causation issue"—that Court nevertheless undertook a careful review of the entire record to determine the exact nature of the *Phillips*-plaintiff's claims. The Fifth Circuit's review is instructive.

**First**, *Phillip*s recognized the underlying action giving rise to appellate-review was one for "wrongful death . . . brought under 42 U.S.C. § 1983." *Id.* The Fifth Circuit further noted, however, that "[a]lthough Phillips brings this suit in federal court under § 1983, she is not alleging that her constitutional rights were violated." *Id.* at 373.

The same is true here. Plaintiff's § 1983 suit is not for violations of his own constitutional rights—*i.e.*, he never alleges any of his constitutional rights were violated—

---

[6] Plaintiff in *Phillips* was the mother of a deceased inmate who died from widespread testicular cancer while incarcerated at the Central Mississippi Correctional Facility in Rankin County, Mississippi. *Phillips*, 311 F.3d at 371-72.

but rather for the alleged violations of his son's constitutional rights. Plaintiff's entire First Amended Complaint, therefore, hinges on whether he can assert Decedent's constitutional claims.

**Second**, *Phillips* also recognized that the plaintiff did "not seek relief as the personal representative of the Decedent's estate." The Fifth Circuit reached this conclusion based on evidence and deduction. Evidentiarily, the plaintiff's action was for "Sandra Fay Phillips, on behalf of the Wrongful Death Beneficiaries of Jonathan Phillips, Plaintiff-Appellant." *Id*. at 369. Based on the action's caption, the Fifth Circuit could easily deduce **the decedent's estate was not a party to the suit**. Such, too, is the case here.

The Fifth Circuit further deduced that even though "the types of damages sought by Phillips suggest **she might have meant to bring both wrongful death and survival actions**[,]" her failure to (1) refer to herself as personal representative of the decedent's estate, or (2) "clearly assert that she is in fact the [d]ecedents's executor or administrator" meant she "could only have brought [her] suit as a wrongful death claim . . . ." *Id*. at 373 n.1. (emphasis added). This led the Fifth Circuit to conclusively determine that "Phillips is not suing to redress . . . any constitutional claims the [d]ecedent might have had prior to his death." *Id*. at 373-37.

This Court must conclusively deduce and determine the same here.

Plaintiff's only claims are Decedent's constitutional claims, relief and recovery from which inures to the benefit of Decedent's Estate. *Beal*, 2020 WL 11191722, at *3. Again, however, since Plaintiff has not opened and administered Decedent's Estate in the

14

Jones County Chancery Court, *Beal* instructs that Plaintiff cannot "pursue a claim for such damages." *Id.* (citing *Long*, 897 So.2d at 174).

**Third**, due to the lack of an estate, the *Phillips*-plaintiff's only recovery could be for "the injuries the Phillips family suffered as a result of the [d]ecedent's death . . . ." *Id.* at 374. Yet, to exact those damages, a pure wrongful-death plaintiff must clear the "causation hurdle." *Id.* at 375 (citing *Wilks*, 680 So.2d at 842).

> The Mississippi Supreme Court has explained that since the wrongful death statute provides for recovery of damages only for a defendant's "wrongful, *lethal* conduct," then to be entitled to recover any damages in a pure wrongful death action, that is, one brought solely under the wrongful death statute and not also under the survival statute, "the wrongful death plaintiff must prove that the wrongful conduct proximately caused the death." *In re Estate of England*, 846 So.2d at 1067 (citing *Berryhill v. Nichols*, 171 Miss. 769, 773, 158 So. 470, 471 (1935)).
>
> In such an action, a plaintiff suing as a listed wrongful death beneficiary or an interested person – and not as a personal representative of the deceased's estate – may recover survival-type damages for personal injuries sustained at the hands of the defendant **only if** he proves that the "same wrongful conduct cause[d] both [the decedent's] personal injury and death ...." *Id.* If he fails to prove this, then there can be no recovery at all, even if he had proven that the defendant's negligence proximately caused the decedent personal injury prior to his death, since damages for such personal injuries "'must be recovered, if at all, under [the survival statute] at a suit by the personal representative, not by the next of kin or heirs at law.'" *Id.* (quoting *Berryhill*, 171 158 So. at 471).

*Beal*, 2020 WL 11191722, at *4 (emphasis added).

Here, Plaintiff never mentions the Estate of Andrew Wesley Jones, never refers to himself as personal representative of Decedent's estate, and never asserts he is the

executor or administrator of Decedent's estate. Thus, according to *Phillips*, Plaintiff can only recover for injuries the Plaintiff himself purportedly suffered as a result of the Decedent's death, provided, of course, Plaintiff can prove an action by the enumerated Defendants caused the same. Again, these damages include "(1) the present net cash value of the life expectancy of the deceased; (2) the loss of the companionship and society of the decedent; (3) the pain and suffering of the decedent between the time of injury and death; (4) funeral and medical expenses of the decedent; and (5) punitive damages." S*pooner*, 2016 WL 3983677, at *4.

Even though Plaintiff—who is bound to only proceed for his own damages, not Decedent's constitutional damages—must nevertheless prove the alleged § 1983 deprivations caused Decedent's death, Plaintiff cannot recover for any constitutional injuries Decedent suffered "***before*** his death." *Phillips*, 311 F.3d at 373-74 n.1 (emphasis by Fifth Circuit). Stated another way, Plaintiff cannot recover for any constitutional claims Decedent might have brought for himself had his death not ensued.

While *Beal* appears to cast a life-preserver to claimants who bring wrongful death suits without first opening decedent-estates, it places a greater burden of proof on non-estate plaintiffs, *i.e.*, those who file "a pure wrongful death action, that is, one brought solely under the wrongful statute and not also under the survival statute." *Beal*, 2020 WL 11191722, at *4. Significantly, "a wrongful death action cannot be maintained unless the defendant's conduct is the cause of the decedent's death." *Phillips*, 311 F.3d at 374.

> Accordingly, a plaintiff seeking to recover on a wrongful death claim under § 1983 must prove both the alleged constitutional deprivation required by § 1983 and the causal

> link between the defendant's unconstitutional acts or omissions and the death of the victim, as required by the state's wrongful death statute.

*Id.*

Plaintiff's First Amended Complaint highlights a serious causation issue that precludes Plaintiff from maintaining Decedent's claims. This is fatal for Plaintiff's claims against the Defendants. As the First Amended Complaint pleads, the OSME's Report "opined that the cause of death was HIV infection." *Am. Compl.* [52] at 15 (¶ 70). Plaintiff's Pleading reiterates the cause of death by stating "Andrew's HIV infection impaired his ability to live and function and **ultimately caused** his death." *Id.* at 19 (¶ 84) (emphasis added).

Plaintiff, however—immediately after discussing the OSME's cause-of-death conclusion—acknowledges that while "**HIV does not itself cause death**, advanced HIV infection lowers a person's ability to fight off secondary infections, which often lead to death. Andrew was clearly suffering from a secondary infection that resulted in his death on January 9, 2021." *Id.* at 15-16 (¶ 71) (emphasis added).

This acknowledgement is fatal to Plaintiff's claims under *Phillip*s. If the HIV infection, which was the sole cause of Decedent's death, did not cause his death, then Plaintiff's assertion here regarding a secondary infection is mere speculation. This is because the OSME's Report did not cite a secondary infection as a contributing cause of Decedent's death, and since no autopsy was performed, it would be impossible for any medical professional to establish to a reasonable degree of medical probability that a secondary infection killed Decedent. *See, e.g., The Univ. of Mississippi Med. Ctr. v. Littleton*,

213 So.3d 525, 536-37 (¶¶ 31-34) (Miss. Ct. App. 2016) (citing *Worthy v. McNair*, 37 So.3d 609 (Miss. 2010)) (when an autopsy reaches an inconclusive result, ancillary expert testimony regarding causation will more likely than not be unable to pinpoint causation).

More to the point here, Plaintiff alleges if Decedent would have received the "antiretroviral drugs that had been prescribed to him by the doctor at the Hattiesburg Clinic" on December 18, 2020, the same would have prevented his death. *Am. Compl.* [52] at 15-16 (¶ 71). This, too, is rank speculation that is impossible to prove to a reasonable degree of medical probability.

Plaintiff's Pleading merely alleges a vague "secondary infection." But which infection out of the hundreds, if not thousands, of possible variants? The inability to know this crucial information further precludes Plaintiff from establishing to a reasonable degree of medical probability whether Decedent's antiretroviral drugs would have influenced the alleged infection in any way, particularly since there is no way of establishing when Decedent contracted the alleged secondary infection, or how it had affected Decedent's body prior to December 18, 2020.

It, of course, bears mentioning that Decedent had previously tested positive for COVID-19 on November 23, 2020, which was still very early on in the pandemic. *Am. Compl.* [52] at 5 (¶ 12). While Decedent reported to the booking officer on December 9, 2020, that he had recently tested negative for COVID-19, there is simply no way of knowing how COVID-19—which uniquely affects the immunocompromised—affected Decedent's overall health and/or whether the antiretroviral drugs would have performed the same under those circumstances.

In other words, there are far too many unknowns for any physician to now, over two (2) years after Decedent's death, conclusively state the cause of Decedent's death beyond that which is written in the OSME's Report: HIV infection—which Plaintiff notably concedes did not cause Decedent's death. The Supreme Court of Mississippi "has stated that 'nothing is absolutely certain in the field of medicine, but the intent of the law is that if a physician cannot form an opinion with sufficient certainty so as to make a medical judgment, neither can a jury use that information to reach a decision.'" *Univ. of Mississippi Med. Ctr. v. Lanier*, 97 So.3d 1197, 1203 (Miss. 2012) (quoting *Catchings v. State*, 684 So.2d 591, 597 (Miss. 1996)). Such is the case here.

In *Lanier*, the Mississippi Supreme Court reversed and rendered after it found a physician's testimony—which analyzed an inconclusive autopsy—could not be based on a reasonable degree of medical probability. *Id*. at 1202-03 (¶¶ 19-23). That physician, when addressing whether a certain drug caused a child's death, stated that "we'll never know because they didn't do [a blood test] in the autopsy and now it's too late to do it." *Id*. at 1202 (¶ 21). Critically, "[t]he expert opinion of a doctor as to causation must be expressed in terms of medical probabilities as opposed to possibilities." *Id*. (¶ 20) (citing *Pittman v. Hodges*, 462 So.2d 330, 333–34 (Miss. 1984)).

Notably, Plaintiff's assertion "[a]lthough HIV does not itself cause death, advanced HIV infection lowers a person's ability to fight off secondary infections, which often lead to death . . ." is inconclusive in and of itself. "Often lead to death" is a far different assertion that "always lead to death." The endless possibilities of what could have caused Decedent's death, especially without a full autopsy, preclude Plaintiff from

establishing any sort of information that a jury could use to reach a decision on Plaintiff's claims, particularly since the OSME's Report does not provide greater detail other than natural death due to HIV infection.

Plaintiff, therefore, cannot prove that alleged wrongful conduct by any of the named defendants "proximately caused the deceased's death," which means Plaintiff cannot independently/separately recover for any civil rights violation that affected, caused, contributed to, impacted, or led to Decedent's death. Instead, Plaintiff can only attempt to recover the damages he himself sustained as a result of Decedent's death. Significantly, however, Plaintiff's Pleading *never* enumerates such damages, nor clearly pleads the same.

Based on Plaintiff's inability to pursue Decedent's survival-type claims, Movants cannot be liable, in either their individual or official capacity, to Plaintiff for (1) deliberate indifference to Decedent's serious medical needs, (2) any *Monell*[7] claim(s) related to policy, practice, or custom violation(s); or (3) any other deprivation of Decedent's rights including, but not limited to "the right to a reasonably safe and secure place of detention, reasonable and adequate medical care, the right to be free from cruel and unusual punishment, and the right to due process and equal protection of the laws as protected by the Fourteenth Amendment." *Am. Compl.* [52] at 18 (¶ 80).

Again, these survival-type claims belong to Decedent's Estate, **which does not exist**. Plaintiff, therefore, is precluded from "pursuing and recovering survival damages,

---

[7] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

whether as part of his wrongful death claim or otherwise." *Beal*, 2020 WL 11191722, at *4 (S.D. Miss. Nov. 10, 2020). As such, this Court must dismiss the constitutional claims Plaintiff filed on behalf of Decedent as the Plaintiff is not the real party in interest to pursue the same. *Beal*, 2020 WL 11191722, at *4-5. The Court must further dismiss these claims as Plaintiff's inability to satisfy proximate causation alternatively defeats his survival-type claims.

The foregoing primarily demonstrates a defect in Plaintiff's "prudential standing, not [necessarily his] Article III standing. *Abraugh v. Altimus*, 26 F.4th 298, 301 (5th Cir. 2022). Here specifically, Plaintiff lacks prudential standing to pursue Decedent's constitutional claims under Mississippi's wrongful death and survival statutes, particularly in light of cases like *Beal* and *Phillips*. Without this standing, the Court must dismiss Plaintiff's claims involving Decedent's constitutional claims.

The fact that Plaintiff cannot pursue Decedent's constitutional claims, nor recover for the same, in turn affects Plaintiff's Article III standing, which must be established "before a federal district court can exercise subject matter jurisdiction." *Id*. at 303. Plaintiff never independently asserts his own constitutional violations, so he must rely on Decedent's constitutional claims to invoke this Court's subject matter jurisdiction. Since Plaintiff cannot pursue Decedent's constitutional claims, Plaintiff lacks Article III Standing, which merits dismissal for lack of jurisdiction.

**B.**     **Plaintiff's inability to pursue Decedent's Constitutional Claims precludes Plaintiff from satisfying Article III Standing**

This Court must dismiss Plaintiff's entire First Amended Complaint as Plaintiff's factual allegations prevent him from demonstrating this Court has jurisdiction to adjudge his claims. As the Court knows, "Federal Courts are of limited jurisdiction, fixed by statute, **and the presumption is against jurisdiction throughout the case**." *Town of Lantana Fla. v. Hopper*, 102 F.2d 118, 119 (5th Cir. 1939) (citing *Lehigh Mining & Manufacturing Co. v. Kelly*, 160 U.S. 327, 16 S.Ct. 307, 40 L.Ed. 444 (1895)) (emphasis added).

Significantly, "it is the burden of the 'party who seeks the exercise of jurisdiction in his favor,' *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936), 'clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute.'" *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231, 110 S. Ct. 596, 608, 107 L. Ed. 2d 603 (1990), *holding modified by City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774, 124 S. Ct. 2219, 159 L. Ed. 2d 84 (2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 518, 95 S.Ct. 2197, 2215, 45 L.Ed.2d 343 (1975)). Plaintiff in this case, therefore, must

> allege in his pleading the facts essential to show jurisdiction. If he fails to make the necessary allegations he has no standing. If he does make them, an inquiry into the existence of jurisdiction is obviously for the purpose of determining whether the facts support his allegations. In the nature of things, the authorized inquiry is primarily directed to the one who claims that the power of the court should be exerted in his behalf. As he is seeking relief subject to this supervision, it follows that he must carry throughout the litigation the burden of showing that he is properly in court . . . If his

> allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof.

*McNutt*, 298 U.S. at 189.

Here, Plaintiff asserts "[j]urisdiction is founded on 28 U.S.C. § 1331 and the aforementioned [provisions of 42 U.S.C. § 1983 and the Fourteenth Amendment." *Am Compl.* [52] at 2 (¶ 2). Section 1331[8] is effectively a succinct, federal statutory provision condensing the "cases and controversies" requirement of Article III of the United States Constitution. "'[S]tanding in federal court is determined entirely by Article III and depends in no degree on whether standing exists under state law.'" *Staten v. Harrison Cnty.*, No. 20-60329, 2021 WL 5766576, at *1 (5th Cir. Dec. 3, 2021) (per curiam) (quoting *Int'l Primate Prot. League v. Adm'rs of the Tulane Educ. Fund*, 895 F.2d 1056, 1061 (5th Cir. 1990), *rev'd on other grounds*, 500 U.S. 72, 74, 76-77 (1991)).

"It is a long-settled principle that standing cannot be 'inferred argumentatively from averments in the pleadings,' *Grace v. American Central Ins. Co.*, 109 U.S. 278, 284, 3 S.Ct. 207, 210, 27 L.Ed. 932 (1883), but rather 'must affirmatively appear in the record.'" *FW/PBS, Inc.*, 493 U.S. at 231 (quoting *Mansfield C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884)). In Article III jurisprudence, a claimant must plausibly allege that "(1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, **as opposed to merely**

---

[8] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

**speculative**, that the injury **will be redressed by a favorable decision**." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81, 120 S. Ct. 693, 704, 145 L. Ed. 2d 610 (2000) (quoting L*ujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)) (emphasis added).

To be sure, "[t]he United States Court of Appeals for the Fifth Circuit has made it clear that 'to have standing to sue under Article III, **a plaintiff must allege** that the three constitutional requirements, quoted above, are met." *Matlock v. Bramlett*, No. 3:20-cv-381-HTW-LGI, 2021 WL 4434015, at *4 (S.D. Miss. Sept. 27, 2021) (quoting *City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019)). "If any one of these elements—injury, causation, or redressability—is absent, plaintiffs have no standing in federal court under Article III to assert their claims." *Doe v. Sch. Bd. of Ouachita Par.*, 274 F.3d 289, 292 (5th Cir. 2001).

Again, Plaintiff has the burden of pleading that he has a personal stake in the litigation, establishing that he himself has personally suffered a constitutional or federal injury-in-fact. Plaintiff fails to meet this burden.

**First**, Plaintiff never alleges he has met or otherwise satisfied Article III's three (3) constitutional requirements. In fact, Plaintiff never asserts he himself has suffered a concrete and particularized injury in any way whatsoever. While the implication may be that Plaintiff's injury is the loss of his son, Plaintiff did not plead the same. Nor did Plaintiff quantify how a favorable decision could redress his unspecified wrongful death damages.

Furthermore, since Plaintiff is not the real party in interest to pursue, and recover for, Decedent's constitutional claims, Plaintiff has no particularized federal injury that could be fairly traceable to Movants, which means there is nothing a favorable decision could redress. Again, "[t]o be plausible, the complaint's factual allegations must be enough to raise a right to relief **above the <u>speculative level</u>**." *Great Lakes Dredge*, 624 F.3d at 210 (emphasis added). Here, the face of Plaintiff's Pleading demonstrates his alleged right to relief does not rise above the speculative level. As such, he cannot sustain all three (3) elements of Article III standing.

**Second**, Plaintiff, individually in his own name, is not the real party in interest to assert Decedent's constitutional claims. Even if he were, his alleged right to relief does not rise above the speculative level due to his inability to satisfy causation, an issue which is itself immersed in speculation.

**Third**, Plaintiff never asserts that he himself has suffered any constitutional or federal injury-in-fact. The only inferential injury suffered by Plaintiff is the loss of his adult son, but this is not a constitutional injury in the Fifth Circuit. Even if it were, Plaintiff has failed to allege that which is necessary to merit this Court's jurisdiction. Notably, "[u]nder § 1983, [Plaintiff] has standing in her individual capacity if [he] 'clearly allege[s] an injury to [his] own personal constitutional rights.'" *Martinez v. Rojo*, No. 1:17-cv-00102-BU, 2020 WL 2542612, at *2 (N.D. Tex. May 19, 2020) (quoting *Hooker v. Dallas Indep. Sch. Dist.*, 3:09-cv-1289-D, 2010 WL 4025877, at *5 (N.D. Tex. Oct. 13, 2010)).

At best, Plaintiff's constitutional injury would be a § 1983, Fourteenth Amendment claim for deprivation of familial association. *See Arreola as Next Friend of Vallejo v. City of*

*Fort Worth*, No. 4:17-cv-00629-P, 2020 WL 3404120, at *7–8 (N.D. Tex. June 19, 2020) (quoting *Molette v. City of Alexandria*, No. Civ.A. CV040501A, 2005 WL 2445432, at *5 (W.D. La. Sept. 30, 2005)). Yet, Plaintiff fails to assert such a claim, let alone one that would satisfy federal pleading standards.

"Given the apparent adoption of the holdings of the *McCurdy*[9] and *Ortiz*[10] courts by the Fifth Circuit in *Malagon de Fuentes*[11], the Fifth Circuit appears most likely to adopt a view that a parental liberty interest in continued companionship with their child, if it exists at all, requires an allegation that the state official's action was directed at the parent-child relationship." *Tamez v. Manthey*, No. B-07-213, 2008 WL 11451445, at *6 (S.D. Tex. Sept. 18, 2008).

> To state a claim for deprivation of his right to familial association under the Fourteenth Amendment, a plaintiff must generally demonstrate that some state action (or inaction) physically separates family members from one another. Only state action that **purposefully interferes** with the family relationship rises to the level of a due process violation.

*In Int. of N.L.P.*, No. 4:17-cv-236-ALM-CAN, 2018 WL 2670416, at *5 (E.D. Tex. May 3, 2018), *report and recommendation adopted*, No. 4:17-cv-236, 2018 WL 2548009 (E.D. Tex. June 3, 2018) (quoting *Doe v. Dallas Indep. Sch. Dist.*, 194 F. Supp. 3d 551, 564 (N.D. Tex. 2016)) (cleaned up).

---

[9] *McCurdy v. Dodd*, 352 F.3d 820 (3d Cir. 2003).
[10] *Valdivieso Ortiz v. Burgos*, 807 F.2d 6, 7 (1st Cir. 1986).
[11] *Malagon de Fuentes v. Gonzales*, 462 F.3d 498 (5th Cir. 2006).

Plaintiff has never alleged that any defendant acted toward Decedent with a specific, ancillary "intent or purpose, whatsoever, to interfere with Plaintiff's familial relationship (or possessory interest in his [son])." *Id*. Thus, Plaintiff lacks independent Article III standing, and this Court must dismiss Plaintiff's First Amended Complaint for lack of jurisdiction as a result.

Beyond Plaintiff raising Decedent's constitutional claims, Plaintiff's Pleading is scant, if not altogether devoid, of claims seeking relief for Plaintiff's personal damages as a statutory wrongful-death beneficiary. Furthermore, considering there are different types of damages at play—Decedent's constitutional, survival-type damages and Plaintiff's "wrongful death" damages—it is necessary to point out that Plaintiff's Pleading not only lacks clear delineation of those categories of damages, but it also fails to allege how those categories would be redressed by a favorable decision.

## II.    WITHOUT FEDERAL CLAIMS, PLAINTIFF'S CASE IS MOOT

This Court must dismiss Plaintiff's case for mootness. (quoting "A case becomes moot when 'there are no longer adverse parties with sufficient legal interests to maintain the litigation or when the parties lack a legally cognizable interest in the outcome of the litigation.'" *Blades v. Countrywide Home Loans, Inc*., No. 1:06-cv-1000-HSO, 2009 WL 3805519, at *2 (S.D. Miss. Nov. 5, 2009) (quoting *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 527 (5th Cir.2008)) (quotations omitted).

Here, Plaintiff does not have sufficient legal interests that allow him to demonstrate actual cases or controversies sufficient to merit this Court's jurisdiction. *Id*. As shown above,

1.  Plaintiff altogether lacks an independent constitutional claim, which means the Court does not have Article III jurisdiction over Plaintiff individually;

2.  Plaintiff may only satisfy the Court's jurisdictional requirements by asserting Decedent's constitutional claims;

3.  Decedent's constitutional claims, *i.e.*, those that he could have brought for himself had death not ensued, may only be pursued when "an estate has been opened and administered through the chancery court . . . ." *Beal*, 2020 WL 11191722, at *3 (citing *Long*, 897 So.2d at 174);

4.  The Estate of Andrew Wesley Jones, Deceased, does not exist, and Plaintiff's Pleading is devoid of any reference to the same; and

5.  Plaintiff may not prosecute his wrongful death action based on (a) his failure to state a clear proximate causation claim upon which relief may be granted; and/or (b) the complete inability to prove causation to a reasonable degree of medical probability.

Since the information above demonstrates mootness, this Court "has no constitutional authority to resolve the issues that it presents." *Blades*, 2009 WL 3805519, at *2 (S.D. Miss. Nov. 5, 2009) (quoting *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 (5th Cir. 2008)).

Accordingly, this Court must dismiss Plaintiff's First Amended Complaint.

## <u>CONCLUSION</u>

The arguments above facially challenge Plaintiff's prudential/merits-based standing as well as his Article III standing. The following observations from Plaintiff's First Amended Complaint **FACIALLY** demonstrate Plaintiff lacks standing under Rule 12(b)(1):

1.     The Estate of Andrew Jones, Deceased—the real party in interest for Decedent's constitutional claims—is not a party to this suit, which means Plaintiff lacks prudential standing to pursue the same;

2.     Plaintiff has not alleged his constitutional rights were violated, which means apart from Decedent's constitutional claims, Plaintiff cannot satisfy the federal case or controversy requirement; and

3.     Plaintiff cannot meet his wrongful death burden to demonstrate any alleged wrongdoing by Defendants proximately caused Decedent's death due to the conclusions of the OSME's Report.

Even considering all of Plaintiff's facts in his First Amended Complaint as true, Plaintiff is not entitled to Decedent's constitutional-damages award(s) (nor can he individually pursue the same), as those belong to Decedent's Estate, a non-party to this suit. To be sure, Plaintiff lacks prudential standing to bring the same, and this Court must, at a minimum, dismiss those claims for relief.

The result of this facial attack against Plaintiff's prudential standing to bring Decedent's constitutional claims trickles down to Plaintiff's remaining, personal wrongful-death damages. If Plaintiff's claims for Decedent's constitutional-damages facially fail, so too must Plaintiff's claims for personal damages.

In the absence of any personal, constitutional-damages allegations by Plaintiff, he is facially left with nothing but state law claims under Miss. Code Ann. § 11-7-13, and those claims do not independently belong in this Court. In other words, since Plaintiff facially lacks any constitutional claim(s), he lacks Article III standing on which to

bootstrap his state-law claims. The Court, therefore, must dismiss Plaintiff and his personal, wrongful death claims due to lack of Article III standing.

Finally, even were the Court to accept Plaintiff's allegation that "Andrew was clearly suffering from a secondary infection that resulted in his death on January 9, 2021," as true, when juxtaposed with other presumed true statements from Plaintiff's First Amended Complaint (*i.e.*, the Medical Examiner noted Decedent died of HIV infection, Andrews HIV infection ultimately caused his death, and "HIV does not itself cause death," *etc.*), the secondary infection claim does not raise a right to relief beyond the speculative level.

Here, Plaintiff is much like the plaintiff in *Phillips* whose case ultimately came down to whether she could satisfy the causal link between the defendants' actions and the decedent's death. She could not, and Plaintiff's First Amended Complaint demonstrates Plaintiff cannot either.

All in all, as demonstrated through the arguments and authorities above, Plaintiff lacks both prudential and Article III standing, and the Court must dismiss Plaintiff's First Amended Complaint as a result.

**DATE:**      **May 15, 2023.**

Respectfully submitted,

**JONES COUNTY, MISSISSIPPI,
SHERIFF JOE BERLIN, AND
JENNIFER HENDERSON**

By:      /s/ *Lance W. Martin*
One of Their Attorneys

WILLIAM R. ALLEN (MSB #100541)
LANCE W. MARTIN (MSB #105203)
Allen, Allen, Breeland & Allen, PLLC
214 Justice Street
P. O. Box 751
Brookhaven, MS 39602
Tel: 601-833-4361
Fax: 601-833-6647
wallen@aabalegal.com
lmartin@aabalegal.com

## CERTIFICATE

I, the undersigned of Allen, Allen, Breeland & Allen, PLLC, one of the attorneys for Defendants, Jones County, Mississippi, Sheriff Joe Berlin, and Jennifer Henderson hereby certify that on this day, I filed the foregoing Memorandum of Authorities in support of Motion to Dismiss for Lack of Standing with the Clerk of the Court using the ECF system, which gave notice of the same to the following:

Robert McDuff, Esq.                    Stephen J. Haedicke-PHV
The Law Office of Robert McDuff        Law Office of Stephen J. Haedicke, LLC
767 North Congress Street              1040 St. Ferdinand Street
Jackson, MS  39202                     New Orleans, LA 70117
rbm@mcdufflaw.com                      stephen@haedickelaw.com
        *Attorneys for Plaintiffs*

Bethany A. Tarpley, Esq.
Daniel J. Griffith, Esq.
JACKS | GRIFFITH | LUCIANO, P.A.
P. O. Box 1209
Cleveland, MS 38732
btarpley@jlpalaw.com
dgriffith@jlpalaw.com
        *Attorneys for Mann, Sgt. Jesse James,*
        *Deputy Colton Dennis, and Carol Johnston*

Robert J. Dambrino, III (MSB #5783)
Gore, Kilpatrick & Dambrino, PLLC
2000 Gateway Drive
Grenada, MS 38901
rdambrino@gorekilpatrick.com
        *Attorney for Mekedes Coleman*

This, the 15th day of May, 2023.

                                        /s/ *Lance W. Martin*
                                        OF COUNSEL