IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**CORBEY JONES,**
           **Plaintiff,**

  vs.                                         **Civil Action No. 2:22-CV-93-KS-MTP**

**JONES COUNTY, MISSISSIPPI et al.,**

           **Defendants.**

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION
FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

The Plaintiff submits this Reply to address three points raised by Defendants' Opposition [89] to the Motion for Leave to File a Second Amended Complaint. [82-83]

First, in their opposition memorandum [89] to the motion for leave to amend, the Defendants oppose only the addition of the Estate as a plaintiff. They do not oppose the other proposed amendments to the complaint.

Second, the Defendants claim that "Plaintiff did not respond to Respondents' Article III argument," [89] at 8, in his response [73] to Defendants' Motion Dismiss on standing grounds [59], and thus "Plaintiff abandoned, conceded, and/or waived his attempts at establishing Article III jurisdiction" and therefore "Plaintiff lacks the Article III jurisdictional ability to even have his Motion for Leave heard." [89] at 8-9.  This contention is wrong for several reasons.  First, the Defendants' argument regarding Article III standing was premised on the mistaken claim that Plaintiff lacked prudential standing under Mississippi law. *See* [59] at 21 ("The fact that Plaintiff cannot pursue Decedent's constitutional claim . . . in turn affects Plaintiff's Article III standing.").  The Plaintiff's response [73] debunked the Defendants' prudential standing

1

argument, and so there was no need to engage with an Article III claim founded on a false premise.

But, in any event, the Plaintiff did in fact address the Article III challenge. He asserted (and continues to assert) that he has standing under 42 U.S.C. § 1983 to bring the claims at issue in this lawsuit. [73] at 5-6. If the Plaintiff has standing under § 1983, then he has standing under Article III. Section 1983 provides that "any citizen of the United States or other person within the jurisdiction thereof" may bring an "action at law . . . for redress" for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States by any person acting under color of state law. Article III, Section 2, Clause 1 provides that "[t]he judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made . . . .". It is elementary that standing to bring an "action at law . . . for redress" of "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States is equivalent to standing under the "judicial Power . . . extend[ing] to all Cases . . . arising under the Constitution [and] the Laws of the United States." And to the extent that Defendants argued causation as part of their Article III contention, causation was directly addressed in the Plaintiff's response. [73] at 1-2, 10-12.

Moreover, the Plaintiff's response [73] cites precedent holding that § 1983 standing exists where a wrongful death beneficiary seeks damages for his own injuries resulting from the deprivation of a decedent's constitutional rights. [73] at 5-6. These precedents directly contradict the Defendants' repeated assertion that the Plaintiff cannot sue for his own damages occasioned by the violation of his son's constitutional rights. Furthermore, the Fifth Circuit recently clarified that Article III standing can be broader than prudential standing under state law:

2

> "[S]tanding in federal court is determined entirely by Article III and depends in no degree on whether standing exists under state law." *Int'l Primate Prot. League v. Adm'rs of the Tulane Educ. Fund*, 895 F.2d 1056, 1061 (5th Cir. 1990) (emphasis added), rev'd on other grounds, 500 U.S. 72, 74, 76–77, 111 S.Ct. 1700, 114 L.Ed.2d 134 (1991). *See Duarte ex rel. Duarte v. City of Lewisville*, 759 F.3d 514, 519 n.1 (5th Cir. 2014) (same). So the fact that Karen was not the proper plaintiff to bring this action under Louisiana law does not mean that she lacked Article III standing. *See Norris*, 869 F.3d at 367.
>
> Karen does indeed have Article III standing to bring this suit. She seeks money damages to address the death of her son, which was allegedly caused by Defendants' conduct. So she has sufficiently alleged all three elements required to establish Article III standing at this stage. *See Lujan*, 504 U.S. at 560–61, 112 S.Ct. 2130 (Article III standing exists at the pleading stage when a plaintiff plausibly alleges (1) an "injury in fact," (2) that is "fairly traceable to the challenged action of the defendant," and (3) that is "likely ... redress[able] by a favorable decision") (cleaned up).

*Abraugh v. Altimus*, 26 F. 4th 298, 303-304 (5th Cir. 2019). The *Abraugh* court also refused to find any waiver or forfeiture of an Article III standing argument where the plaintiff had cited to an analogous case that—although it did not address standing directly—permitted a plaintiff to file an amendment similar to that which the *Abraugh* plaintiff sought: "[Plaintiff] has sufficiently preserved her standing argument by arguing that there is standing here for the same reason there's standing in *Nobre*." *Id*. at 305.

Here, the Plaintiff seeks money damages for the death of his son, which he has alleged was caused by the Defendants' conduct. He has consistently argued he has standing to bring a § 1983 claim based on these facts. *Abraugh* and the precedents cited in the Plaintiff's response [73] establish that he has both prudential and Article III standing to pursue this § 1983 action. Accordingly, there is no jurisdictional bar to his motion for leave to file the Second Amended Complaint.

Third, with respect to their contention that the Estate should not be added as a plaintiff, the Defendants clearly misinterpret *Beal v. Merit Health Central*, No. 3:20-cv-335, 2020 WL

11191722 ((S.D. Miss. Nov. 10, 2020), and other precedents. The Defendants quote the following passage from *Beal*:

> Any one or more persons in any one or more of these categories may bring the action, and whoever brings the action may recover damages of every kind, including survival-type damages. See Burley, 26 So. 3d at 1018 (citing J.J. Newman Lumber Co. v. Scipp, 128 Miss. 322, 91 So. 11 (1922)); Clark, 60 So. 3d at 161. In such an action, survival-type damages are recoverable on behalf of the estate, regardless of whether the estate (or personal representative) has joined as a plaintiff in the action. See Long, 897 So. 2d at 169. However, since such damages are only recoverable by or on behalf of the estate, then only where an estate has been opened and administered through the chancery court may any wrongful death plaintiff pursue a claim for such damages. Long, 897 So. 2d at 174.

[89] at 4-5, *quoting Beal* at *3. In the subsequent four paragraphs of their response, the Defendants conduct an interpretive analysis that leads them to the conclusion that *Beal* meant to say that "an estate must exist prior to suit" for a wrongful death plaintiff to recover survival-type damages. [89] at 6.

But the Defendants' argument about the meaning of *Beal* is directly contradicted later in the opinion when Judge Lee made it clear that the estate *did not* have to be opened prior to the filing of the suit:

> At the time he commenced this action, no estate had been opened for Earl Beal and plaintiff filed suit solely in his capacity as one of the wrongful death beneficiaries listed in the wrongful death statute. He had standing in that capacity to bring and pursue a wrongful death action, although the fact that no estate had been opened would have precluded him from pursuing and recovering survival damages, whether as part of his wrongful death claim or otherwise. See Long, 897 So. 2d at 174. *An estate has since been opened, and thus, this is no longer an impediment* to plaintiff's recovery of such damages *as part of his wrongful death claim*.

*Beal* at *4 (first emphasis added, second emphasis in original). Moreover, in *Long v. McKinney*, 897 So.2d 160 (Miss. 2004), cited both by Judge Lee in *Beal* and by the Defendants in their response, [89] at 6, the lawsuit was filed twelve days after the death of the decedent and there is no indication that an estate was opened prior to that filing. *Id.* at 164-165. Thus, neither it nor

4

*Beal* support the Defendants' contention that an estate must exist prior to the filing of a wrongful death suit in order for a plaintiff to recover survival damages.

Nor does *Burley v. Douglas*, 26 So. 3d 1013 (Miss. 2009), another case cited in both *Beal* and the Defendants' opposition ([89] at 5, 8), provide any support for Defendants' arguments. As in *Beal* and perhaps in *Long*, the estate in *Burley* was not opened until after suit was filed. 26 So. 3d at 1015. But this fact was no impediment to the plaintiff seeking survival-type damages as a part of a wrongful death action once an estate was opened:

> Burley brought this action as an "interested party," a status he held because of his qualification as an heir-at-law of Joshua and Jakura Hill. Burley's later-acquired status as administrator of their estates did not confer upon him standing, as personal representative or otherwise, to commence the wrongful-death *action,* but merely gave him authority to bring additional *claims* within that action for certain damages on behalf of the estates. …
>
> In other words, a claimant cannot bring claims on behalf of an estate that does not yet exist. Hence, Burley amended his complaint specifically to seek damages for property damage and medical and funeral expenses only after he was appointed administrator of Joshua and Jakura Hill's estates. Burley had *standing* to bring the suit as an interested party from the moment of Joshua's and Jakura's deaths, but he gained the *ability* to recover on behalf of the estates only after those estates came into existence and he was appointed administrator.

*Id.* at 1023-24.

In this case, "it has been clear at the commencement of [the] action that [the] deceased suffered personal injuries and death from the same alleged wrongful conduct," and therefore the Plaintiff, as the father of the deceased, "may confidently pursue an action for damages for such personal injuries *and* death exclusively under the wrongful death statute." *Beal* at *4 (emphasis added). The First Amended Complaint lays out in detail the Defendant's dire condition and suffering on the morning he died, his inability to control his body, to stand or walk as he tried to obtain water and crawled on the floor to try to retrieve his breakfast, his spastic movements as he tried to eat his food that he had spilled on the floor, and his uncontrollable shaking. [52] at 11-

15. This suffering resulted from the same actions and omissions that led to this death later that morning.  Thus, it is not necessary to add the Estate as a party.  But the Plaintiff seeks to add the Estate in an abundance of caution in the event this Court or an appellate court concludes it is necessary for the Estate to be a party.  If it turns out that the Plaintiff made a mistake in this regard, it would be a reasonable mistake for the reasons already mentioned.

Moreover, the Defendants seem to claim that "there is a chance 'that a fact-finder could reasonably find that the defendant's alleged negligence caused the deceased to suffer personal injury but did not also proximately cause of contribute to this death.'" [89] at 9, *quoting Beal* at *4.  It is hard to imagine how the death resulted from something different than what caused the suffering in the hours preceding it, but given that the Defendants have now raised the possibility and signaled they may make such a claim, it is reasonable to allow the Plaintiff to add the Estate in an abundance of caution so that, if necessary, he may in the alternative pursue what *Beal* called a separate "action under the survival statute." *Id.* at 3.[1]  This result would be in keeping with the liberal spirit of Federal Rules of Civil Procedure 15, 17, and 21.[2]  It is also in keeping with Judge Lee's observation that "[t]he Mississippi courts have upheld amendments allowed under these very circumstances." *Beal* at *4-5, *citing Methodist Hosp. of Hattiesburg, Inc. v. Richardson,* 909 So.2d 1066, 1072 (Miss. 2005).

Accordingly, the motion for leave to file the second amended complaint [82] should be granted.

---

[1] The Plaintiff notes that in Mississippi there is a three-year statute of limitations for § 1983 claims. *Edmonds v. Oktibbeha Cty.*, 675 F.3d 911, 916 (5th Cir. 2012).  That time has not expired for claims based on the death in this case, which occurred in January 2021.

[2] Fed. R. Civ. Proc. 17(a)(3) comes into play only if the Court otherwise is considering dismissal of the action for failure to name the real party in interest.  For reasons already discussed, there would be no basis for dismissal even if the Estate were not added.  Thus, the motion to amend in order to add the Estate can be granted under Rule 15 or Rule 21, the latter of which allows the Court "[o]n motion or own its own . . . on just terms, [to] add or drop a party."

Respectfully submitted,

/s/ Robert McDuff
Robert McDuff.
Law Office of Robert McDuff
767 North Congress Street
Jackson, MS 39202
rbm@mcdufflaw.com

/s/ Stephen J. Haedicke (PHV)
Law Office of Stephen J. Haedicke, LLC
1040 St. Ferdinand Street
New Orleans, LA 70117
stephen@haedickelaw.com
Admitted Pro Hac Vice

Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I certify that on this 25th day of August, 2023, the foregoing was filed via the Court's ECF system which will electronically serve all Counsel of Record.

/s/ Stephen Haedicke
Co-Counsel for Plaintiff