**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**CORBEY JONES; ESTATE OF ANDREW
WESLEY JONES**                                                              **PLAINTIFF**

**VERSUS**                                   Civil Action No. 2:22-cv-93-KS-MTP

**JONES COUNTY, MS; SHERIFF JOE
BERLIN; DEPUTY JAMES MANN; SGT.
JESSE JAMES; DEPUTY COLTON
DENNIS; CAROL JOHNSTON; AND
DEPUTY MEKEDES COLEMAN,**                            **DEFENDANTS**

**SHERIFF JOE BERLIN AND JENNIFER HENDERSON'S
MEMORANDUM OF AUTHORITIES  IN SUPPORT OF SECOND MOTION
FOR JUDGMENT ON THE PLEADINGS BASED ON QUALIFIED IMMUNITY**

Come now Sheriff Joe Berlin and Jennifer Henderson (collectively "Movants"), by

and through counsel, and, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure,

submit their Memorandum of Authorities in support of Second Motion for Judgment on

the Pleadings based on Qualified Immunity, as follows:

**INTRODUCTION**

Andrew Wesley Jones ("Andrew" or "Decedent") died on  January 9, 2021, while

incarcerated as a pre-trial detainee at the Jones County Adult Detention Center

("JCADC") in Ellisville, MS. Decedent's father, Plaintiff Corbey Jones, and the Estate of

Andrew Wesley Jones ("Estate;" collectively "Plaintiffs") seek relief under 42 U.S.C. §

1983 for alleged violations of Decedent's constitutional rights.

Movants challenge the sufficiency of Plaintiffs' pleading, and move the Court to

specifically consider whether Plaintiffs' allegations raised against them in Plaintiffs'

Second Amended Complaint ("SAC") remove Movants' qualified immunity.

## RELEVANT BACKGROUND FACTS FOR MOVANTS' MOTION

"Based on a test conducted in late October 2020, Andrew was diagnosed as positive for HIV on November 5, 2020." *Sec. Am. Compl.* [94] at 5 (¶ 12). Thirty-five (35) days later, Andrew booked into JCADC on December 9, 2020." *Id.* at 5-6 (¶¶ 16, 17). He died thirty-one (31) days later, on January 9, 2021. *Id.* at 15 (¶¶ 67, 70).

On January 12, 2021, the Office of the State Medical Examiner ("OSME") "opined that **the cause of death** was HIV infection." *Id.* at 15 (¶ 71) (emphasis added). Significantly, the OSME only performed an External Postmortem Examination. *See OSME Report.*[1] In other words, the OSME did not perform a complete autopsy.

On July 14, 2022, which was one (1) year, six (6) months, and five (5) days after Decedent's death, his parents[2] filed their initial Complaint [1] in this matter. After an initial round of discovery, Plaintiff filed his First Amended Complaint [94] on April 26, 2023, and his Second Amended Complaint [94] on September 25, 2023.

## CLAIMS IN GENERAL

Plaintiffs' SAC, with respect to individual-capacity claims against Movants, is difficult to discern. The SAC directs Court and Counsel to three (3) causes of action, all of which appear to have subclaims. Notably, each cause of action begins with: "Plaintiff repeats and re-alleges each and every allegation of the Second Amended Complaint." *Sec. Am. Compl.* [94] at 18 (¶ 80), 19 (¶¶ 82, 84).

---

[1] Plaintiff has incorporated the OSME's Report into his Second Amended Complaint by reference. As such, this Court may properly consider the Report in the Rule 12 context, and Movants respectfully request the Court do so. *See.* n.4 (*infra*).

[2] Andrew's mother, Cynthia Jones, died on December 11, 2022.

## I.     FIRST CAUSE OF ACTION

Plaintiffs direct their first cause of action against "Defendants" as a collective group, stating they acted "individually and together" in depriving the Decedent of various constitutional rights. Yet, Plaintiffs never delineate which individual allegedly did what with respect to Plaintiffs' subclaims for: denial and/or deprivation of (1) the right to a reasonably safe and secure place of detention; (2) reasonable and adequate medical care; (3) the right to be free from cruel and unusual punishment; and (4) the right to due process and equal protection of the laws as protected by the Fourteenth Amendment. *Id.* at 18-19 (¶ 81).

## II.    SECOND CAUSE OF ACTION

Plaintiffs' second cause of action is twofold. It contains a *Monell*[3] claim against Jones County, Mississippi, and Sheriff Berlin in his official capacity[4], and it contains individual capacity claims against Henderson and Carol Johnston based on their alleged roles as final policymakers. This cause lists a scattershot of alleged actions—"established, condoned, ratified, and encouraged"—against four (4) defendants without identifying what each defendant allegedly did.

## III.   THIRD CAUSE OF ACTION

In their final cause of action, Plaintiffs raise two (2) claims under the Americans with Disabilities Act ("ADA"), to wit: (1) an ADA claim for failure to reasonably

---

[3] *Monell v. City of New York Dept. of Social Servs.*, 436 U.S. 658 (1978).

[4] Here, Plaintiffs' official-capacity claim against Sheriff Berlin is duplicative or redundant of Plaintiffs' *Monell* claim against the County. Thus, this claim is subject to dismissal. *See, e.g., Graham v. Hodge*, 69 F. Supp. 3d 618, 627 (S.D. Miss. 2014), *aff'd*, 619 F. App'x 394 (5th Cir. 2015) (citing *Pride v. City of Biloxi*, No. 1:10-cv-100, 2011 WL 5835109, at *5 (S.D. Miss. Nov. 21, 2011)).

accommodate Decedent's needs in the JCADC; and (2) a Section 504[5] of the ADA's Rehabilitation Act claim for denial of services.

**SPECIFIC CLAIMS AGAINST MOVANTS**

Reading Plaintiffs' SAC as a whole, it appears Plaintiffs assert the following claims against the following defendants:

## I.   SHERIFF JOE BERLIN

Plaintiffs' SAC mentions Sheriff Berlin ten (10) times. Of these entries, six (6) are non-substantive, *i.e.*, they merely identify Sheriff Berlin and do not allege his personal involvement.[6] Thus, Plaintiff has only asserted four (4) potentially substantive claims against Sheriff Berlin, which are:

1.   "On information and belief, Defendants SHERIFF BERLIN and Warden HENDERSON were aware that these were the policies and practices at the Detention Center and took no action to change them." *Sec. Am. Compl.* [94] at 8 (¶ 30);

2.   "Defendants JONES COUNTY, SHERIFF BERLIN, HENDERSON, and JOHNSTON were each aware or should have been aware of these problems with healthcare at the Detention Center. However, these Defendants failed to address these problems with adequate reforms." *Id.* at 17 (¶ 74);

3.   Defendants "JONES COUNTY, SHERIFF BERLIN, HENDERSON, and JOHNSTON . . . failed to make necessary changes to policies and procedures or to intervene to see that Andrew Jones and others in

---

[5] 29 U.S.C. § 794.

[6] The non-substantive entries are found in: (a) Case Caption; (b) Sheriff Berlin's party identification *Sec. Am. Compl.* [94] at 2 (¶ 6); (c) Henderson's party identification, which lists Sheriff Berlin as Henderson's employer *Id.* at 3 (¶ 7); (d) Deputies James Mann, Jesse James, Colton Dennis, and Mekedes Coleman's party identification, which lists Sheriff Berlin as their employer *Id.* at 4 (¶ 8); (e) Patricia Carol Johnston's party identification, which lists Sheriff Berlin as her employer *Id.* (¶ 9); and (f) Plaintiffs' claim(s) against Johnston, which again lists Sheriff Berlin as her employer *Id.* at 6 (¶ 20).

their custody were provided adequate treatment for serious health needs." *Id.* at 17-18 (¶ 76); and

4.    Defendants JONES COUNTY, SHERIFF BERLIN, HENDERSON, and JOHNSTON "established, condoned, ratified, and encouraged customs, policies, patterns, and practices that directly and proximately caused the deprivation of the civil and constitutional rights of the deceased . . . ." *Id.* at 19 (¶ 83).

## II.    JENNIFER HENDERSON

Plaintiffs' SAC [94] mentions Henderson nine (9) times. Of these entries, three (3) are non-substantive, *i.e.*, they merely identify Henderson and do not allege her personal involvement.[7] Thus, Plaintiff has only asserted six (6) potentially substantive claims against Henderson, four (4) of which are listed in Sheriff Berlin's section above. The two (2) claims against Henderson separate and distinct from the four (4) above are:

1.    "On information and belief, Warden HENDERSON and other jail staff were also aware that Andrew was HIV positive." *Id.* at 7 (¶ 24); and

2.    "Defendants HENDERSON, MANN, JAMES, DENNIS, COLEMAN, and JOHNSTON . . . failed in their responsibility to ensure that Andrew Jones was in a safe, appropriate environment and that he was receiving necessary care and accommodations for his serious medical needs, which constituted a disability." *Id.* at 18 (¶ 77).

## STANDARD OF REVIEW

Courts apply Rule 12(b)(1) or (6) dismissal standards to Rule 12(c) motions for judgment on the pleadings. *Hoyle v. City of Hernando, Mississippi*, No. 3:21-cv-00171-NBB-RP, 2022 WL 4486997, at *2 (N.D. Miss. Sept. 27, 2022) (citing *Great Plains Trust Co. v.*

---

[7] The non-substantive entries are found in Henderson's party identification, which contains three (3) entries. *Sec. Am. Compl.* [94] at 3 (¶ 7).

*Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n.8 (5th Cir. 2002)). A court's Rule 12(c) task is to determine whether a plaintiff's complaint "states a valid claim for relief." *Troice v. Greenberg Traurig, L.L.P.*, 921 F.3d 501, 504 (5th Cir. 2019).

## I.    RULE 12(b)(6)

"When deciding a Rule 12(b)(6) motion to dismiss, the Court is limited to the allegations set forth in the complaint and any documents attached to the complaint." *Wheeler v. Wiliams*, No. 4:17-cv-96-SA-JMV, 2018 WL 6204444, at *3 (N.D. Miss. Nov. 27, 2018) (citing *Walker v. Webco Indus., Inc.*, 562 Fed. Appx. 215, 216–17 (5th Cir. 2014) (per curiam)). "To survive a motion to dismiss under Rule 12(b)(6), the 'complaint[8] must contain sufficient factual matter, accepted as true[9], to state a claim to relief that is plausible on its face.'" *Tilman v. Clarke Cty.*, 514 F. Supp. 3d 884, 889 (S.D. Miss. 2021) (quoting *Great Lakes Dredge & Dock Co. LLC v. La. State*, 624 F.3d 201, 210 (5th Cir. 2010)).

"To be plausible, the complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Great Lakes Dredge*, 624 F.3d at 210. "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558

---

[8] "Although a district court primarily looks to the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, there are other sources it may consider." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (per curiam). "For example, a district court may take into account documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned. *Id.* (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).
[9] Plaintiffs' factual allegations are taken as true, and construed "in the light most favorable to" Plaintiffs. *Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 249 (5th Cir. 2017).

(2007) (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 234)).

## II.    RULE 12(c)

"A party may move for judgment under Rule 12(c) '[a]fter the pleadings are closed ... but early enough not to delay trial.'" *McZeal v. Louisiana*, No. 21-30631, 2022 WL 4078582, at *3 (5th Cir. Sept. 6, 2022) (quoting Fed. R. Civ. P. 12(c)). "A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (citing *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004)). As with Rule 12(b)(6) motions, "'[t]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief.'" *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001) (quoting *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n. 8 (5th Cir. 2000)).

Significantly, "the analysis [for Rules 12(b)(1), 12(b)(6), and 12(c)] is functionally the same. The critical issue is whether the complaint contains 'sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."' " *Doe v. Bd. of Supervisors of Univ. of Louisiana Sys.*, No. 22-00338-BAJ-SDJ, 2023 WL 143171, at *8 (M.D. La. Jan. 10, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)) (citations omitted). "If there are insufficient factual allegations to raise a right to relief above the speculative level, **the claim must be dismissed**." *Tate v. Lafayette Cnty. Miss.*, No. 1:11-cv-00204, 2012 WL 6454579, at *1 (N.D. Miss. Dec. 13, 2012).

*Twombly*'s call to, as early as practicable, expose deficiencies that demonstrate a claimant is not entitled to any relief necessitates a court's consideration of any applicable

preclusions or immunities. *Twombly*'s guidance, therefore, supports early consideration of the qualified immunity defense.

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985). "The purpose of qualified immunity is to protect public officials from the 'burden of fighting lawsuits which arise from the good faith performance of their duties.'" *Patterson v. City of McComb, Mississippi*, No. 5:18-cv-74-DCB-MTP, 2018 WL 4956123, at *3 (S.D. Miss. Oct. 12, 2018) (quoting *Wren v. Towe*, 130 F.3d 1154, 1159 (5th Cir. 1997)). Qualified immunity "is not just immunity from judgment, but rather, is immunity from all aspects of suit." *Jacques v. Procunier*, 801 F.2d 789, 791 (5th Cir. 1986).

Once a "defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal **before the commencement of discovery**." *Mitchell*, 472 U.S. at 526 (emphasis added). A "plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm [the plaintiff] has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

"To evaluate whether a government official is entitled to qualified immunity, [courts] conduct a two-prong inquiry . . . (1) whether the undisputed facts and the disputed facts, accepting the plaintiffs' version of the disputed facts as true, constitute a

violation of a constitutional right, and (2) whether the defendant's conduct was objectively reasonable in light of clearly established law." *Harmon v. Dallas Cty., Texas*, 927 F.3d 884, 892 (5th Cir. 2019), *as revised* (July 9, 2019) (quoting *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015)). Significantly, courts may address either step first. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009).

Regardless of which step courts address first, they must do so "'at the earliest possible stage of the litigation.'" *Carswell v. Camp*, No. 21-10171, 2022 WL 17335977, at *2 (5th Cir. Nov. 30, 2022) (quoting *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021) (per curiam)). This results in a "full stop." *Id.* at *4. If a plaintiff cannot overcome the qualified immunity defense, the reviewing court must dismiss the plaintiff's claims against the officer(s) immune from suit.

## **ARGUMENT**

This Court must dismiss Plaintiffs' individual-capacity claims against Sheriff Berlin and Jennifer Henderson as Plaintiffs cannot overcome Berlin and Henderson's qualified immunity.

## I.   PLAINTIFFS FAIL TO DEMONSTRATE SHERIFF BERLIN AND HENDERSON PERSONALLY, INDIVIDUALLY, AND DISCRETELY VIOLATED DECEDENT'S CONSTITUTIONAL RIGHTS

To overcome qualified immunity, a plaintiff, in part, must show that a defendant's "actions were objectively unreasonable in the light of clearly established law at the time of the conduct in question." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). Here,

> the [rights Sheriff Berlin and Henderson are] alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours

> of the right[s] must be sufficiently clear that a reasonable official would understand that what he is doing violates [those rights]. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

"'The dispositive question[, therefore,] is whether the violative nature of **particular conduct** is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Hamilton v. McLemore*, No. 2:19-cv-47-KS-MTP, 2021 WL 3719559, at *9 (S.D. Miss. Mar. 31, 2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)) (emphasis added). To demonstrate which rights are clearly established, the Fifth Circuit requires plaintiffs to

> identify a case—usually, a body of relevant case law—in which an officer acting under similar circumstances . . . was held to have violated the [Constitution]. While there need not be a case directly on point, the unlawfulness of the challenged conduct must be beyond debate. This leaves the rare possibility that, in an obvious case, analogous case law is not needed because the unlawfulness of the [challenged] conduct is sufficiently clear even though existing precedent does not address similar circumstances.

*Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020) (citations omitted). If Plaintiffs cannot present a clearly established case or body of relevant law that would give Sheriff Berlin or Henderson fair notice their alleged actions violated Decedent's clearly established rights, then qualified immunity shields them from Plaintiffs' claims. *See Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

10

An officer has fair notice when "the legal principle[s] clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). "Abstract or general statements of legal principle untethered to analogous or near-analogous facts are not sufficient to establish a right 'clearly' in a given context; rather, the inquiry must focus on whether a right is clearly established as to the specific facts of the case." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015).

Section 1983 cases require specific facts "identifying defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995). Personal involvement facts satisfy one (1) of a valid § 1983 claim's two (2) prongs: a § 1983 "'plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation **was committed by a person** acting under color of state law.'" *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008) (quoting *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir.2000)) (emphasis added).

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must **plead** that **each** Government-official defendant, through the official's **own individual actions**, has violated the Constitution." *Iqbal*, 556 U.S. 662, 676 (2009) (emphasis added). If a plaintiff fails to satisfy the personal involvement requirement against individual defendants, those defendants retain immunity. *U.S. Tech. Corp.*, 2016 WL 4098609, at *6.

11

Mississippi's federal courts' understanding of shotgun pleadings supports such immunity retention. *See, e.g., Copeland v. Axion Mortg. Grp.* LLC, No. 1:16-cv-159-HSO-JCG, 2016 WL 4250431, at *3-4 (S.D. Miss. Aug. 11, 2016). To be sure, federal courts have "repeatedly warned attorneys against such pleading practices' because they violate Federal Rule of Civil Procedure 8(a)(2)." *Williams v. City of Jackson*, No. 3:20-cv-785-DPJ-FKB, 2021 WL 4485865, at *5 (S.D. Miss. Sept. 29, 2021) (quoting *Payne v. Univ. of S. Miss.*, No. 1:12-cv-41-KS-MTP, 2015 WL 1482636, at *4 (S.D. Miss. Mar. 31, 2015)).

When a plaintiff attributes "discrete actions . . . to all or multiple defendants without explaining the basis for such grouping or distinguishing between the relevant conduct of the named Defendants," the plaintiff's complaint fails to satisfy federal pleading standards. *Sahlein v. Red Oak Cap., Inc.*, No. 3:13-cv-00067-DMB-JM, 2014 WL 3046477, at *4 (N.D. Miss. July 3, 2014) (indistinguishable claims against collective group of defendants fail to satisfy Rule 8). "Shotgun complaints are subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Copeland*, 2016 WL 4250431, at *4.

Conclusory allegations that lump a group of defendants together "without delineating which of the individual Defendants engaged in particular conduct . . . are insufficient to state a claim against [defendants] in their individual capacities, **or to overcome their qualified immunity**." *Plumier v. Mississippi Dep't of Corr.*, No. 1:18-cv-13-HSO-JCG, 2018 WL 4323925, at *3 (S.D. Miss. Sept. 10, 2018) (emphasis added). This failure to delineate discrete actions of named defendants is characteristic of shotgun pleadings. *Copeland*, 2016 WL 4250431, at *4 (citing *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001)).

12

Here, Plaintiffs' SAC "commits the 'mortal sin' of incorporating each allegation into each of its [three] counts." *Alexander*, 2021 WL 800840, at *3 (citing *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015)). This practice of including "multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint . . ." is the most common type of shotgun pleading. *Id.* (quoting *Weiland*, 792 F.3d 1313, 1321–23). As noted above, Plaintiffs' SAC incorporates this practice.

"As a practical matter, this means [Plaintiffs' three (3) causes of action] include a minimum of approximately [sixty-nine (69)] allegations spanning across approximately [fifteen (15)] pages." *Id.* "This wholesale incorporation of extraneous allegations is particularly troublesome because neither of the [three (3)] counts make any effort to identify which acts of [either Sheriff Berlin or Henderson] underlie each claim." *Id.* This is emblematic shotgun pleading, and it is problematic for Plaintiffs' claims against Sheriff Berlin and Henderson.

If a plaintiff's complaint is a shotgun pleading, *i.e.*, filled with indiscrete allegations against grouped-defendants, then each individual defendant retains qualified immunity as the claims against them fail to demonstrate "that the alleged deprivation **was committed by <u>a person</u>** acting under color of state law." *Whitley*, 726 F.3d at 638 (emphasis added; citations and quotations omitted). "A person," as used in *Whitley*, is singular, and without this singularity regarding alleged constitutional violations, a

13

defendant-officer is entitled to judgment in their favor as the complaining plaintiff cannot remove the defendant-officer's cloak of qualified immunity.

Furthermore, the critical pleading-error precludes claimants from establishing Section 1983 claims against the individual defendants. Such is the case here. Absent non-conclusory factual averments **showing what Sheriff Berlin and Henderson supposedly did**, the Court must dismiss them from suit based on their retention of qualified immunity.

As demonstrated above through the parsing out of Plaintiffs' claims, they all resemble a quintessential shotgun pleading against Sheriff Berlin and Henderson because Plaintiffs fail to distinguish Berlin and Henderson's alleged individual, discrete-actions. *Williams*, 2021 WL 4485865, at *5 (quoting *Sahlein*, 2014 WL 3046477, at *3) (cleaned up). More specifically, Plaintiffs never allege a singular, discrete-action claim against either Sheriff Berlin or Henderson as to how they, independently, violated Decedent's constitutional rights. In other words, Plaintiffs never delineate Sheriff Berlin or Henderson's particular conduct, which precludes Plaintiffs from maintaining § 1983 claims against them.

Again, "[a] state actor may be individually liable under § 1983 only if he or she "was personally involved in the acts causing the deprivation of his constitutional rights . . . .'" *U.S. Tech. Corp.*, 2016 WL 4098609, at *6 (quoting *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981)). There are no such allegations of **personal involvement** here.

"[B]ecause proof of an individual defendant's personal involvement in the alleged wrong **is a prerequisite to liability** on a claim for damages under 42 U.S.C. § 1983[,]" this

Court must dismiss Plaintiffs' claims against Sheriff Berlin and Jennifer Henderson since Plaintiffs' SAC is devoid of any clear, precise allegations against either Sheriff Berlin or Henderson. *Id.* (citing *Tate v. Gusman*, 459 F. Supp.2d 519, 523 (E.D. La. 2006)).

## II.    PLAINTIFFS FAIL TO OTHERWISE ASSERT A CONSTITUIONAL VIOLATION AGAINST EITHER SHERIFF BERLIN OR HENDERSON IN THEIR INDIVIDUAL CAPACITIES

The conclusory and shotgun nature of Plaintiffs' SAC makes it difficult to discern what Plaintiffs allege against either Sheriff Berlin or Henderson in their individual capacities. Nevertheless, in order to grasp Plaintiffs' allegations so that Movants may present the most competent qualified-immunity-motion, Movants scrutinize Plaintiffs' allegations and claims to determine whether any survive Sheriff Berlin and Henderson's qualified immunity.

One of Plaintiffs' most-succinct guides in the relief they seek is found in paragraph 81 of their First Cause of Action. It reads:

> The Defendants[10], acting individually and together, and under color of law, engaged in a course of conduct that acted to deprive Andrew Jones of his constitutional rights and did deprive him of said rights, specifically, the right to a reasonably safe and secure place of detention, reasonable and adequate medical care, the right to be free from cruel and unusual punishment, and the right to due process and equal protection of the laws as protected by the **Fourteenth Amendment** to the Constitution of the United States.

---

[10] As argued above, Plaintiffs' use of the collective "Defendants" is characteristic of shotgun pleadings.

*Second Am. Compl.* [94] at 18-19 (¶ 81) (emphasis added). This paragraph shows Plaintiffs are raising conditions of confinement claims pursuant to the Fourteenth Amendment.[11]

"The standard for determining liability under this Amendment depends on whether the pretrial detainee attacks 'a condition of confinement' or alleges 'episodic acts or omissions' by one or more government officials." *Graham v. Hodge*, 69 F. Supp. 3d 618, 627 (S.D. Miss. 2014), aff'd, 619 F. App'x 394 (5th Cir. 2015) (quoting *Gilbert v. Berndt*, 400 Fed.Appx. 842, 844 (5th Cir. 2010)). Thus, the crucial determination of Plaintiffs' claims depends on what they are attacking and/or alleging. In either instance, to the extent Plaintiffs' claims are connected to Sheriff Berlin or Henderson's supervisory roles, they cannot be held individually-liable for actions in their official capacity. *See Gaines v. McDonald*, No. 3:12-cv-404-JMR, 2013 WL 4483393, at *3 (S.D. Miss. Aug. 19, 2013), *aff'd*, 577 F. App'x 335 (5th Cir. 2014).

"In an 'episodic act or omission' claim, an official is usually interposed between the prisoner and the governmental entity, such that the prisoner **first complains of a particular act or omission of the official** and secondarily points to a policy, custom, or procedure that caused or allowed the act or omission. *Id*. (quoting *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997)) (emphasis added). The first paragraph of Plaintiffs' SAC indicates

---

[11] While Plaintiffs use the phrase "cruel and unusual," which typically hearkens the Eighth Amendment's protections for convicted prisoners, the prohibition against cruel and unusual punishment extends to pretrial detainees like Decedent via the Fourteenth Amendment. *See, e.g.*, *Williams v. City of Yazoo, Mississippi*, 41 F.4th 416, 422 (5th Cir. 2022) (explaining Fifth Circuit's position on not subjecting pretrial detainees to punitive conditions).

Plaintiffs are proceeding under an episodic acts or omissions claim. After listing several alleged failures against the collective "Defendants," Plaintiffs assert:

> These failures show the individual Defendants' **deliberate indifference** to Andrew's critical medical needs while he was at the jail. Furthermore, the evidence will show that these failures were the **direct result of unconstitutional and unlawful policies and practices** at the Detention Center.

*Second Am. Compl.* [94] at 1 (¶ 1). This allegation is indicative of an episodic acts or omissions claim consistent with *Graham*. Plaintiffs' use of the term "deliberate indifference" further indicates an episodic acts or omissions claim.

"A jailer's constitutional liability to a pretrial detainee for episodic acts or omissions is measured by a standard of **deliberate indifference**." *Thornhill v. Breazeale*, 88 F. Supp. 2d 647, 651 (S.D. Miss. 2000) (citing *Hare v. City of Corinth*, 74 F.3d 633, 643 (5th Cir. 1996)). To be sure, with respect to pretrial detainee's due process rights, a claimant "must demonstrate that 'the official acted or failed to act with deliberate indifference to the detainee's needs.'" *Id.* (quoting *Hare*, 74 F.3d at 648). So, the relevant question shifts to whether Plaintiffs have alleged Sheriff Berlin and Henderson, through their own individual acts or omissions, were deliberately indifferent to Decedent's rights.

Plaintiffs use some form of "deliberate" just five (5) times in their Second Amended Complaint: (1) ". . . the Defendants **deliberately** ignored . . . ;" (2) ". . . the individual Defendants' **deliberate indifference** . . . ;" (3 & 4) "The foregoing actions of all Defendants with respect to the care of Andrew Jones demonstrate **deliberate indifference** to Andrew's serious medical needs, were the result of **deliberate indifference**, and resulted in his death and pre-death suffering . . . ;" and (5) "The failure

17

to accommodate Andrew Jones's disability was intentional and/or **deliberately indifferent** to his rights under Section 504 and the ADA . . . ." *Second Am. Compl*. [94] at 1 (¶ 1), 18 (¶ 78), and 20 (¶ 90) (emphasis added). These assertions lack particularity against Sheriff Berlin and Henderson, are not well-pleaded factual allegations[12], and they fail to meet the extremely high deliberate-indifference standard[13].

"The test for establishing deliberate indifference is 'one of subjective recklessness as used in the criminal law.'" *Adams v. Banks*, 663 F. Supp. 2d 485, 502 (S.D. Miss. 2009) (quoting *Farmer*, 511 U.S. at 837). Significantly, a "prison official may not be held liable under this standard pursuant to Section 1983 unless the Plaintiff **alleges facts** which, if true, would establish that the official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference.'" *Id*. (quoting *Farmer*, 511 U.S. at 838). Stated another way, "plaintiffs suing governmental officials in their individual capacities must allege specific conduct giving rise to a constitutional violation." *Anderson v. Pasadena Indep. Sch. Dist*., 184 F.3d 439, 443 (5th Cir. 1999) (citing *Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir. 1995)). Notably, Plaintiffs' SAC is devoid of any such factual allegations against either Sheriff Berlin or Hendersson.

---

[12] An "allegation that defendants exhibited deliberate indifference [is] merely a legal conclusion, even if it might have been couched as a factual allegation." *Edmiston v. Borrego*, 75 F.4th 551, 560 (5th Cir. 2023) (quoting *Doe v. Robertson*, 751 F.3d 383, 388 (5th Cir. 2014)) (cleaned up). This Court, therefore, "'cannot accept its truth for purposes of evaluating the sufficiency of the pleadings.'" *Doe*, 751 F.3d at 388 (quoting *Iqbal*, 556 U.S. at 678).
[13] *See*, *e.g.*, *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

Instead, as to Sheriff Berlin and Henderson, Plaintiffs' allegations primarily focus on policy issues, specifically that Sheriff Berlin and Henderson were aware of allegedly deficient healthcare policies at JCADC, and that Sheriff Berlin and Henderson failed to reform the policies. *Sec. Am. Compl.* [94] at 8 (¶ 30), 17 (¶ 74); 17-18 (¶ 76). But Plaintiffs' policy-based claims, particularly "failure to adopt policies" claims, "[are] distinct theor[ies] of *Monell* liability" and, therefore, inapplicable to Sheriff Berlin or Henderson in their individual capacities. *Buchicchio v. LeBlanc*, No. CV 22-00147-BAJ-EWD, 2023 WL 2027809, at *14 (M.D. La. Feb. 15, 2023).

Facially, however, Plaintiffs' "failure to adopt/reform policies" claims could be construed, albeit generously, as alleging alternative claims for (1) supervisory liability and (2) negligence against Sheriff Berlin and Henderson. Both claims, however, fail.

**First**, to the extent Plaintiffs' allegations against Sheriff Berlin and Henderson sound in negligence, *i.e..*, that either breached a duty by not adopting/reforming policies, this Court must dismiss the same. "Negligence, even gross negligence, is insufficient to serve as the basis for a Section 1983 claim." *Rogers v. Wever*, No. 5:09-cv-29 DCB JMR, 2010 WL 3522783, at *5 (S.D. Miss. Sept. 2, 2010) (citing *Hare*, 74 F.3d at 645).

**Second**, to the extent Plaintiffs' allegations sound in supervisory liability for failure to adopt/reform policies claims, this Court must dismiss the same because Plaintiffs fail to allege facts sufficient to overcome Sheriff Berlin and Henderson's qualified immunity with respect to these claims. "Ordinarily, supervisors may not be held vicariously liable for **constitutional violations** committed by subordinate employees." *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 254 (5th Cir. 2005), *abrogated on*

19

*other grounds by Kingsley v. Hendrickson*, 576 U.S. 389, 401, 135 S. Ct. 2466, 2475, 192 L. Ed. 2d 416 (2015)) (emphasis added). Sherrif Berlin and Henderson, however, may be liable for constitutional violations committed by subordinate employees when supervisors act, or fail to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates." *Id*. (Court's emphasis). Yet, significantly, "[s]upervisory liability requires a constitutional violation by a subordinate." This Court, therefore, must determine whether an underlying constitutional violation exists.

Despite Plaintiffs primarily asserting an episodic acts or omissions claim, a generous reading of their Complaint could suggest a pure "condition of confinement" cause of action, with the general conditions or restrictions of incarceration at JCADC under attack being the alleged policies and practices of "failing to obtain medical records from outside providers who treated inmates . . . failing to provide medications to inmates with pre-existing conditions unless those medications were brought in by family members . . . [and,] failing to provide medications that were prescribed to inmates by outside providers. *Second Am. Compl.* [94] at 16-17 (¶ 74). "When a plaintiff challenges conditions of confinement, 'the proper inquiry is whether those conditions amount to punishment of the detainee.'" *Est. of Bonilla by & through Bonilla v. Orange Cnty., Texas*, 982 F.3d 298, 308 (5th Cir. 2020) (quoting *Garza v. City of Donna*, 922 F.3d 626, 632 (5th Cir. 2019)). Plaintiffs' SAC makes "no allegation of express intent to punish, nor can [this Court] infer such an intent from the pleadings." *Simons v. Clemons*, 752 F.2d 1053, 1056 (5th Cir. 1985).

Regardless of Plaintiffs' inability to sustain a condition of confinement claim based on their failure to allege an express intent to punish, it remains that "[p]retrial detainees have a constitutional right to medical care and protection from harm during their confinement." *Brumfield*, 551 F.3d at 327 (citing *Hare*, 74 F.3d at 650). It is undisputed here that Decedent received medical care at JCADC and from two (2) outside providers. *Second Am. Compl.* [94] at 7 (¶¶ 23-26), 9 (¶ 32), 10-11 (¶¶ 39-44). Plaintiffs' issue, however, is not the complete lack of medical care, but the alleged failure to receive optimal medical care in the form of two prescription medications (Descovy and Tivicay). *See Toomer v. Coulter*, No. 1:18-cv-312-RHW, 2020 WL 1286215, at *2 (S.D. Miss. Mar. 18, 2020) (quoting *Spriggens v. LaRavia*, 2012 WL 1135845 at *4 (E.D. La., April 4, 2012)).

Significantly, "'[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Id.* (quoting *Spriggens*, 2012 WL 1135845, at *4) (citation omitted). Even were this Court to analyze the alleged inadequacy of Decedent's medical treatment with respect to prescription medications, Plaintiffs nevertheless fail to demonstrate an underlying constitutional violation regarding the same.

Plaintiffs allege—just once in their SAC—"the Defendants deliberately ignored Andrew's serious medical conditions and **refused to provide him desperately needed medical treatment**, both by failing to obtain and administer medications a doctor had prescribed that would have saved his life and by failing to respond to his obvious medical emergency on the day of his death." *Second Am. Compl.* [94] at 1 (¶ 1). Despite Plaintiffs'

21

failure to further allege any actions demonstrating intentional refusal or denial of Decedent's medical care, Movants generously regard the gist of Plaintiffs' constitutional claim as a denial of medical care. Again, "[i]n order to prove that a denial of medical care constituted cruel and unusual punishment, the plaintiff must demonstrate that prison officials showed '**deliberate indifference to serious medical needs**.'" *Adams*, 663 F. Supp. 2d at 490 (quoting *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).

In this case, Plaintiffs' denial-of-medical-care claims are primarily raised against Nurse Carol Johnston. Plaintiffs' SAC, however—in much the same way that it fails to establish deliberate indifference against Sheriff Berlin and Henderson (shotgun pleading, lack of specificity, *etc.*)—fails to plead Nurse Johnston acted with subjective deliberate indifference with respect to Decedent's prescription medications. Plaintiffs allege that Nurse Johnston knew Decedent had HIV, that he had received prescriptions from an HIV doctor, and that Nurse Johnston failed to obtain or provide the medications. *Second Am. Compl.* [94] at 10 (¶ 42), 16 (¶ 72). Yet, Plaintiffs fail to plead that Nurse Johnston was subjectively aware of any risk of serious harm to Decedent if she failed to provide the medications and that she disregarded that risk. Plaintiffs, therefore, have failed to allege a denial-of-medical-care claim against Nurse Johnston that would survive her own qualified immunity.

Since Plaintiffs fail to allege a constitutional violation against Nurse Johnston, let alone one that would survive qualified immunity, Plaintiffs' supervisory liability claims against Sheriff Berlin and Henderson necessarily fail. Even if Plaintiffs' denial-of-medical-care claims against Nurse Johnston survived, their supervisory-liability claims

against Sheriff Berlin and Henderson nevertheless fail. As noted above, Sheriff Berlin and Henderson can only be liable for a supervisory-liability claim if they acted or failed to act, with deliberate indifference, with respect to constitutional violations perpetuated by Nurse Johnston.

Again, Plaintiffs' deliberate indifference allegations in their SAC are both sparse and generalized. Plaintiffs never allege that either Sheriff Berlin or Henderson knew Nurse Johnston denied Decedent medical care, or anything of the like. What is more, Plaintiffs never allege that either Sheriff Berlin or Henderson responded to Nurse Johnston's alleged denials with their own deliberate indifference. Plaintiffs, therefore, have failed to state a supervisory-liability claim against Sheriff Berlin or Henderson, let alone one that could survive qualified immunity.

## III.    SHERIFF BERLIN AND HENDERSON ARE ENTITLED TO QUALIFIED IMMUNITY

This Court must dismiss Plaintiffs' claims against Sheriff Berlin and Henderson as Plaintiffs cannot demonstrate either officer violated clearly established law[14]. "[F]or a right to be 'clearly established' it must be 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right'." *Edmiston*, 75 F.4th at 559 (quoting *Est. of Bonilla*, 982 F.3d at 306). Plaintiffs cannot sustain this burden with respect to any potential individual-capacity claims against Sheriff Berlin and Henderson.

---

[14] As argued in Section I above, Plaintiffs fail the first prong of the two-prong qualified immunity analysis as they fail to first "'demonstrate that each official violated [Decedent]'s statutory or constitutional right[.]'" *Edmiston*, 75 F.4th at 558 (quoting *Converse v. City of Kemah*, 961 F.3d 771, 775 (5th Cir. 2020)). The instant section solely focuses on Plaintiffs' inability to satisfy the second prong of the qualified immunity analysis.

To be quite sure, it is nigh on impossible for a plaintiff to present a competent body of relevant caselaw showing officers acting under similar circumstances when the plaintiff's allegations against the officers are ill-defined, non-existent, or simply do not state a constitutional violation. Again, at best, Plaintiffs' claims against Sheriff Berlin and Henderson could be construed as supervisory-liability claims for failure to adopt policies. Specifically, here, it would be failure to adopt policies (a) requiring JCADC to request and retain an inmate's medical records from outside providers, (b) requiring each inmate who sees an outside provider to request physical copies of any new prescriptions from the outside provider before returning to JCADC, and (c) always providing the exact medications prescribed by the outside providers.

"Critically, courts must not define clearly established law at a high level of generality; rather, [courts] must undertake the inquiry in light of the specific context of the case." *Crandel v. Hall*, 75 F.4th 537, 544 (5th Cir. 2023) (quoting *Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021)) (cleaned up). Even so, in the Fifth Circuit, inmates can "demonstrate an Eighth Amendment violation by showing that a prison official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Easter v. Powell*, 467 F.3d 459, 465 (5th Cir. 2006) (quoting *Domino*, 239 F.3d at 756).

Plaintiffs never allege that Sheriff Berlin or Henderson refused to treat Decedent. Plaintiffs never allege that Sheriff Berlin or Henderson ignored Decedent's complaints. Plaintiffs never allege that Sheriff Berlin or Henderson intentionally treated Decedent

differently. And Plaintiffs never allege Sheriff Berlin or Henderson engaged in conduct demonstrating a wanton disregard for Decedent's serious medical needs.

Sheriff Berlin and Henderson have raised the qualified immunity defense. It is now Plaintiffs' burden to negate the same "and show why immunity is inapplicable." *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) (citing *Waganfeald v. Gusman*, 674 F.3d 475, 483 (5th Cir. 2012)). This is a demanding burden as Plaintiffs' "conclusory statements, naked assertions, and threadbare recitals fail to plausibly show violations by [Sheriff Berlin or Henderson of Decedent's] clearly established constitutional rights." *Id*.

Sheriff Joe Berlin and Jennifer Henderson respectfully request this Court hold Plaintiffs to their burden, and, should Plaintiffs fail to meet their burden, dismiss Plaintiffs' claims against both Sheriff Berlin and Henderson, with prejudice.

<u>CONCLUSION</u>

Plaintiffs' "vague and imprecise allegations [against the collectively-grouped "Defendants" and or named-Defendants in succession] do not comport with the doctrine of qualified immunity and the dictates of Section 1983." *U.S. Tech. Corp*., 2016 WL 4098609, at *6. "Thus, the individual defendants [(Sheriff Joe Berlin and Jennifer Henderson)] are entitled to immunity under § 1983 for any asserted actions in which they were not personally involved." *Id*.

Significantly, due to Plaintiffs' complete failure to delineate specific, personal-involvement claims against either Sheriff Berlin or Jennifer Henderson, they are entitled to complete qualified immunity, and this Court must completely dismiss them from this suit. To that end, Movants respectfully request the Court dismiss Plaintiffs' individual-

capacity claims against them, with prejudice, based on the doctrine of qualified immunity.

As to Sheriff Berlin and Henderson's qualified immunity, Plaintiffs' Second Amended Complaint fails to satisfy both prongs of the qualified immunity analysis. Accordingly, Sheriff Berlin and Jennifer Henderson respectfully request this Court dismiss Plaintiffs' claims against them in their individual capacity, with prejudice.

**DATE:**          **October 26, 2023.**

                                        Respectfully submitted,

                                        **SHERIFF JOE BERLIN, AND
                                        JENNIFER HENDERSON**

                                        By:      /s/ *Lance W. Martin*
                                                    One of Their Attorneys

WILLIAM R. ALLEN (MSB #100541)
LANCE W. MARTIN (MSB #105203)
Allen, Allen, Breeland & Allen, PLLC
214 Justice Street; P. O. Box 751
Brookhaven, MS 39602
Tel: 601-833-4361 Fax: 601-833-6647
wallen@aabalegal.com
lmartin@aabalegal.com

## CERTIFICATE

I, the undersigned of Allen, Allen, Breeland & Allen, PLLC, one of the attorneys for Defendants Sheriff Joe Berlin and Jennifer Henderson, hereby certify that on this day, I filed the foregoing Memorandum of Authorities in support of Second Motion for Judgment on the Pleadings based on Qualified Immunity with the Clerk of the Court using the ECF system, which gave notice of the same to the following:

Robert McDuff, Esq.                     Stephen J. Haedicke-PHV
The Law Office of Robert McDuff          Law Office of Stephen J. Haedicke, LLC
767 North Congress Street                1040 St. Ferdinand Street
Jackson, MS  39202                       New Orleans, LA 70117
rbm@mcdufflaw.com                        stephen@haedickelaw.com

      *Attorneys for Plaintiff*

Bethany A. Tarpley, Esq.
Daniel J. Griffith, Esq.
JACKS | GRIFFITH | LUCIANO, P.A.
P. O. Box 1209
Cleveland, MS 38732
btarpley@jlpalaw.com
dgriffith@jlpalaw.com

      *Attorneys for Mann, Sgt. Jesse James,*
      *Deputy Colton Dennis, and Carol Johnston*

Robert J. Dambrino, III (MSB #5783)
Gore, Kilpatrick & Dambrino, PLLC
2000 Gateway Drive
Grenada, MS 38901
rdambrino@gorekilpatrick.com

      *Attorney for Mekedes Coleman*

This, the 26th day of October, 2023.

                                    */s/ Lance W. Martin*
                                    OF COUNSEL