IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**CORBEY JONES; ET AL.**                                                                                         **PLAINTIFF**

**VERSUS**                                                                        **Civil Action No. 2:22-cv-93-KS-MTP**

**JONES COUNTY, MS; ET AL.**                                                                           **DEFENDANTS**

### SHERIFF JOE BERLIN AND JENNIFER HENDERSON'S
### REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION [106, 107]

Come now Sheriff Joe Berlin and Jennifer Henderson (collectively "Movants"), by and through counsel, and submit their Reply to Plaintiffs' Response in Opposition to Second Motion for Judgment on the Pleadings based on Qualified Immunity, as follows:

### INTRODUCTION

This action centers on Andrew Wesley Jones' ("Decedent") one (1) month detention in the Jones County Adult Detention Center ("JCADC"), and his natural death therein from HIV infection. The very crux of Plaintiffs' claims is that Decedent died because Nurse Carol Johnston "failed to take any steps to obtain and provide Andrew the antiretroviral medications that" Decedent's HIV-doctor prescribed on December 18, 2020, and January 4, 2021.[1] *Sec. Am. Compl*. [94] at 8-9 (¶ 31), 10 (¶¶ 39-42).

Significantly, Plaintiffs' claims primarily rest on Johnston's policies which Plaintiffs allege failed to (1) obtain medical records from outside providers; (2) provide medications to inmates with pre-existing conditions unless those medications were brought in by family members; and (3) provide medications that were prescribed to inmates by outside providers." *Id*. at 16-17 (¶ 74); *see also Resp. Mem*. [107] at 19-20. In

---

[1] Decedent died on Saturday, January 9, 2021, so the relevant timeframe is from Friday, January 18, 2020, to January 9, 2021, or approximately twenty-two (22) days.

turn, Plaintiffs' claims against Movants primarily rest on whether (1) Johnston's alleged policies are unconstitutional; and (2) Movants violated Decedent's constitutional rights by not changing Johnston's alleged policies.

Movants challenge Plaintiffs' SAC because it fails to (a) state actionable claims, largely because the SAC is an impermissible shotgun pleading; and (b) defeat Movants' qualified immunity[2]. Thus, a critical review of Plaintiffs' factual allegations in their SAC is necessary, because "[c]ourts are obligated to implement a qualified immunity defense at the earliest possible stage of litigation . . . ." *Kelson v. Clark*, 1 F.4th 411, 416 (5th Cir. 2021) (quoting *Westfall v. Luna*, 903 F.3d 534, 542 (5th Cir. 2018)) (cleaned up).

Plaintiffs assert Movants' shotgun-pleading arguments are "hyper-technical," but *Twombly*[3], *Iqbal*[4], and the doctrine of qualified immunity require precisely that. *Resp. Mem.* [107] at 1. These analyses all demand an in-depth review of Plaintiffs' SAC to determine whether it pleads specific facts that allow the Court to (1) reasonably infer liability; and (2) deny qualified immunity. *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

Thus, the Court is obligated "to carefully scrutinize [Plaintiffs' SAC] before subjecting [Sheriff Berlin and Henderson] to the burdens of broad-reaching discovery." *Kelson*, 1 F.4th at 416 (quoting *Longoria v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 263–64 (5th Cir. 2019)) (cleaned up).

## **PLAINTIFFS' CLAIMS**

Plaintiffs' have provided a Theory of Recovery chart[5] to illustrate which claims

---

[2] Plaintiffs, in preserving the issue for appeal, argue the doctrine of qualified immunity should be rejected. *Resp. Mem.* [107] at 12-15. Nevertheless, the Fifth Circuit views the doctrine as intact. *Edmiston v. Borrego*, 75 F.4th 551, 558 (5th Cir. 2023).
[3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).
[4] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).
[5] Plaintiffs' chart contains only two (2) theories of recovery which purportedly raise claims against Sheriff Berlin or Henderson in their individual capacity. *See Resp. Mem.* [107] at 2-3.

Plaintiffs have asserted against Sheriff Berlin and/or Henderson in their individual capacity. *Resp. Mem*. [107] at 2-3. The chart, in and of itself, emblematically exemplifies the shotgun nature of Plaintiffs' pleading[6], *i.e.*, it attributes "discrete actions . . . to all or multiple defendants without explaining the basis for such grouping or distinguishing between the relevant conduct of the named Defendants." *Sahlein v. Red Oak Cap., Inc.*, No. 3:13-cv-00067-DMB-JM, 2014 WL 3046477, at *4 (N.D. Miss. July 3, 2014).

To grasp Plaintiffs' claims, it is crucial for the Court to review Plaintiffs' two (2) causes of action that, when read with the sixty-nine (69) paragraphs of factual allegations, purportedly "clearly set[] forth the actions of Defendants Berlin and Henderson" *Resp. Mem*. [107] at 15; *see also Sec. Am. Compl*. [94] at 18-19 (¶¶ 80-83). Facially, these causes of action not only lump grouped-defendants together "without delineating which of the individual Defendants engaged in particular conduct[,]"[7] they also fail to "make any effort to identify which acts of [either Sheriff Berlin or Henderson] underlie each claim."[8]

Even without clearly delineating what either Sheriff Berlin or Henderson did—or how, when, where, and why they did it—with respect to the generic claims in the two (2) causes of action cited, Plaintiffs nevertheless assert that their "SAC contains a short and plain statement of the facts of this case, and a fair reading of the SAC shows exactly what the allegations and claims are against each Defendant." *Resp. Mem*. [107] at 1. Movants disagree, especially as to the claims purportedly raised against them.

Plaintiffs' Response Memorandum ("Response") ultimately clarifies two (2) supervisory-liability claims against Sheriff Berlin and Henderson: (1) for failure to

---

[6] Significantly, Plaintiffs admit their SAC incorporates "all preceding paragraphs into each of their causes of action," which is indicative of the most common type of shotgun pleading. *Resp. Mem*. [107] at 15; *see also Mem*. [102] at 13.
[7] *Plumier v. Mississippi Dep't of Corr.*, 2018 WL 4323925, at *3 (S.D. Miss. Sept. 10, 2018).
[8] *Alexander*, 2021 WL 800840, at *3.

3

adopt/reform policies in the conditions-of-confinement context; and (2) for "the episodic-acts-or-omissions of these other defendants under a failure to train and supervise theory." *Id*. at 22-23. More specifically, Plaintiffs assert Movants (a) were aware of Johnston's alleged policy of "refusing to acquire medications for inmates with pre-existing conditions," but failed to change it; and (b) failed to provide any training to deputies on how to recognize/respond to a medical emergency. *Resp. Mem*. [107] at 1-2.

Movants respectfully request this Court carefully scrutinize Plaintiffs' SAC to determine whether the same "contains sufficient factual allegations in support of the legal theories [purportedly] alleged . . . ." *Texas Tamale Co., Inc. v. CPUSA2*, LLC, No. 4:21-cv-3341, 2022 WL 20717360, *3 (S.D. Tex. Oct. 20, 2022). Careful scrutiny will demonstrate Plaintiffs' SAC does not meet federal pleading standards as to Plaintiffs' purported claims against Movants, nor does it plead sufficient facts sufficient to defeat Movants' qualified immunity.

## REBUTTAL ARGUMENTS

**I.     PLAINTIFFS FAIL TO SUSTAIN THEIR FAILURE-TO-TRAIN CLAIM(S)**

Plaintiffs, in arguing the Court should reject Movants' shotgun-pleading arguments, assert their SAC alleges Movants "failed to train deputies on monitoring inmates in solitary confinement and on recognizing and responding to medical emergencies." *Resp. Mem*. [107] at 15. Plaintiffs refer Court and Counsel to paragraphs 28-30 and 74 of their SAC in support. Only one (1) of these paragraphs (¶ 24) mentions failure to train[9], and it does very little to attribute that alleged failure to Movants. It states:

> There was further a policy and practice of failing to provide
> any training to deputies or other Detention Center employees

---

[9] Plaintiffs' SAC uses a variant of "train" just three (3). Here, and when Plaintiffs generically assert Movants are "responsible for . . . training . . . ." *Sec. Am. Compl*. [94] at 3 (¶¶ 6, 7).

4

> on the provision of healthcare to inmates at the jail. Defendants JONES COUNTY, SHERIFF BERLIN, HENDERSON, and JOHNSTON were each aware or should have been aware of these problems with healthcare at the Detention Center. However, these Defendants failed to address these problems with adequate reforms.

*Sec. Am. Compl*. [94] at 17 (¶ 74). This allegation is too thin to sustain Plaintiffs' claims.

Even though Plaintiffs assert "the SAC clearly sets forth the actions of Defendants Berlin and Henderson," the plain text of their SAC suggests otherwise with respect to this claim. *Resp. Mem*. [107] at 17. Plaintiffs' Response does little, if anything, to demonstrate this claim should survive, particularly with respect to deliberate indifference.

Neither Plaintiffs' SAC nor Response get anywhere close to satisfying failure-to-train-claims in the Fifth Circuit. *See, e.g.*, *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 n.26 (5th Cir. 2005). "There are simply no factual allegations—like those detailing the who, what, when, where, and why—that could bring [Plaintiffs'] conclusory allegations of wrongdoing [regarding failure-to-train] beyond the speculative level[ . . . , *i.e.*, t]here are no well-pleaded allegations against [Movants] for the Court to accept as true." *Magee v. Bank of New York Mellon Corp*., 2:23-cv-64-KS-MTP, 2023 WL 4568780, *3  (S.D. Miss. July 17, 2023). Accordingly, Plaintiffs' "conclusory allegations concerning unspecified policies are not sufficient to impute liability to [Movants]." *Armour v. Davis*, No. 6:18-cv-535, 2020 WL 2850140, *21 (E.D. Tex. June 1, 2020).

Plaintiffs' failure-to-train allegations against Movants are so sparse, "the Court is unable to assess the how, what or when, as it pertains to each individual Defendant and each separate cause of action." *Johansen v. Myers*, 1:23-cv-6-LG-BWR,  2023 WL 5498060, *4 (S.D. Miss. Aug. 24, 2023). In the absence of specific facts against the individual

Movants, Plaintiffs cannot establish a constitutional, nor can they demonstrate either Movants' conduct was objectively unreasonable in light of clearly established law. Accordingly, Movants are entitled to dismissal of Plaintiffs' failure-to-train claims.

## II. PLAINTIFFS FAIL TO SUSTAIN THEIR UNCONSTITUTIONAL FAILURE-TO-ADOPT CLAIM(S)

"[T]o overcome the [qualified immunity] defense at the pleading stage, [Plaintiffs] must allege facts that, taken in the light most favorable to the [Plaintiffs], would establish that [Sheriff Berlin and Henderson] violated a clearly established right in such a way that caused injury to [Decedent]." *Resp. Mem.* [107] at 17. As Movants point out in their brief-in-chief, Plaintiffs never allege a singular, discrete-action claim against either Sheriff Berlin or Henderson as to how they, independently, violated Decedent's constitutional rights. In other words, Plaintiffs never delineate Sheriff Berlin or Henderson's particular conduct, which precludes Plaintiffs from maintaining § 1983 claims against them.

Plaintiffs do, however, allege the following jointly against Movants: (1) were aware of Johnston's medical-care policies, and "took no action to change them;" (2) were aware of healthcare-policy-problems at JCADC, yet "failed to address these problems with adequate reforms;"[10] and (3) "knew or should have known of serious deficiencies in the policies, practices and procedures at the Jail related to medical care and observation of prisoners generally. Despite their knowledge of these serious deficiencies, these Defendants failed to make necessary changes to policies and procedures or to intervene to see that Andrew Jones and others in their custody were provided adequate treatment for serious health needs."[11] *Sec. Am. Compl.* [94] at 8 (¶ 30), 17 (¶¶ 74, 76). Thus, at best,

---

[10] The second allegation also included Jones County. *Sec. Am. Compl.* [94] at 17 (¶ 74).
[11] The third allegation also included Jones County and Johnston. *Id.* (¶ 18).

Plaintiffs allege either a (1) failure to adopt/promulgate policies claim; or (2) supervisory-liability for conditions-of-confinement claim against Movants. Both fail.

**First**, Movants maintain that unconstitutional failure to adopt/promulgate policy claims are distinct theories of *Monell*[12] liability. *Clark v. LeBlanc*, 19-00512-BAJ-SDJ, 2023 WL 2655725, *11 (M.D. La. Mar. 27, 2023) (citing *Buchicchio v. LeBlanc*, No. 22-00147-BAJ-EWD, 2023 WL 2027809, at *14 (M.D. La. Feb. 15, 2023)). It makes sense to view this claim as such, particularly since—as Plaintiffs' point out—Sheriff Berlin, in his official capacity as Sheriff of Jones County, Mississippi, is statutorily endowed with charge over the jail. Not to mention that Plaintiffs name Jones County alongside Movants in two (2) out of their three (3) failure-to-change-policies allegations. Considering these points and cases, the Court should view Plaintiffs' policy claims against Movants as claims for *Monell* liability, and dismiss the claims against Movants in their individual capacity.

**Second**, Plaintiffs fail to plead any facts sufficient to demonstrate either Sheriff Berlin or Henderson acted with deliberate indifference. Plainly, "[l]iability for failure to promulgate policy, or for promulgating an unconstitutional policy, **requires that the defendants have acted with deliberate indifference**." *Washington v. Copiah Cnty. Bd. of Supervisors*, 3:16-cv-629-TSL-RHW, 2018 WL 11416134, *5 (S.D. Miss. Feb. 27, 2018) (citing *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011)) (emphasis added). Plaintiffs' SAC is scant with respect to the topic, *i.e.*, there are no allegations that Movants (a) had actual or constructive knowledge that Johnston's policies violated inmate's constitutional rights; (b) knew that if they did not amend Johnston's policies, then constitutional deprivations would occur; and (c) intentionally chose not to act, despite knowing the consequences of not amending Johnston's policies. *See Bouchereau v. Gautreaux*, No. 14-805-JWD-SCR, 2015

---

[12] *Monell v. City of New York Dept. of Social Servs.*, 436 U.S. 658 (1978).

7

WL 5321285, *9-10 (M.D. La. Sept. 11, 2015) (citing *O'Quin v. Gautreaux*, No. 14-98-BAJ-SCR, 2015 WL 1478194, *6 (M.D. La. Mar. 31, 2015)); *see also Porter*, 659 F.3d at 446-47.

Also, it is not enough to merely allege someone was deliberately indifferent, especially if—as here—the allegation is conclusory, couched in collective allegations against grouped-defendants, and contains a legal conclusion[13]. *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023). "Although this [deliberate indifference] conclusion might have been 'couched as a factual allegation,' [this Court] cannot accept its truth for purposes of evaluating the sufficiency of the pleadings. *Doe*, 751 F.3d at 388 (quoting *Iqbal*, 556 U.S. at 678). Accordingly, Plaintiffs' supervisory-liability claims against Movants must fail.

Plaintiffs, despite their SAC not clearly pleading a supervisory-liability claim, argue that Johnston's policies violate clearly established law in such a way that any failure by Movants to amend those policies automatically satisfies the deliberate indifference standard. *Resp. Mem.* [107] at 22-23. Plaintiffs' Response asserts "[s]upervisory officials may be liable under § 1983 for their failure to adopt policies if that failure **causally** results in a constitutional injury." *Crittindon v. LeBlanc*, 37 F.4th 177, 186 (5th Cir. 2022), *cert. denied*, No. 22-1171 (U.S. Oct. 2, 2023) (emphasis added). Again, however, this claim is nowhere in Plaintiffs' SAC, nor are there facts supporting it.

As to facts that establish *Crittindon*'s level of deliberate indifference, claimants must demonstrate "notice of pattern of similar constitutional violations due to deficient policies, permitting the inference that Defendants deliberately chose policies causing violations of constitutional rights." *Id*. Plaintiffs have altogether failed to allege any similar constitutional violations here. To be sure, no constitutional violations exist.

---

[13] Plainly, "an allegation of deliberate indifference is merely a legal conclusion." *Doe v. Robertson*, 751 F.3d 383, 388 (5th Cir. 2014) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

8

As Plaintiffs make clear in both their SAC and Response, Decedent received medical care. *Second Am. Compl*. [94] at 7 (¶¶ 23-26), 9 (¶ 32), 10-11 (¶¶ 39-44); *Resp. Mem*. [107] at 26. To be sure, Decedent went to three (3) outside providers in a seventeen (17) day span, the last of which was to his HIV-doctor on January 4, 2021, five (5) days before his death. This weighs heavily against Plaintiffs' denial-of-medical-care claims. Plaintiffs' mischaracterization of Johnston's actions and/or her alleged policies also weigh heavily against Plaintiffs' denial-of-medical care claims.

Virtually every case Plaintiffs cite in support of their claims involves direct refusal of medical care, and many of them involved refusal after an inmate specifically asked for care. Active denial and refusal of specifically-requested medicines is not at issue here.

Instead, Plaintiffs allege Johnston "failed" to take various actions with respect to Decedent's prescriptions, *i.e*, Plaintiffs never assert Johnston denied or refused to act, merely that she failed to.[14] Even more so, Plaintiffs never provide specific, non-conclusory, factual averments against Johnston that she was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, that Johnston actually drew the inference, and that Johnston disregarded that risk by failing to take reasonable measures to abate it." *Robinson v. Midland Cnty., Texas*, 80 F.4th 704, 711 (5th Cir. 2023) (quoting *Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020)) (cleaned up). Nor do they defeat Johnston's qualified immunity with equal specificity.

Accordingly, "[w]ith no underlying violation for denial of medical care [by Johnston], [Sheriff Berlin and Henderson] cannot be liable under § 1983 for any supervisory deficiencies regarding the medical care provided to [Decedent]." *Pena v.*

---

[14] Plaintiffs' claims against Johnston may amount to negligence or even medical malpractice, but they do not amount to deliberate indifference. *Stewart v. Murphy*, 174 F.3d 530, 534, (5th Cir. 1999).

9

*Givens*, 637 Fed. Appx. 775, 786 (5th Cir. 2015). To succeed on a denial-of-medical-care claim, Plaintiffs "must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). It stands to reason that the substance of a medical-care policy is subject to *Domino*'s scrutiny as to the policy's alleged constitutionality, *i.e.*, a policy cannot direct its adherents to be deliberately indifferent to an inmate's serious medical needs.

Johnston's policies are not deliberately indifferent to inmates' serious medical needs, nor do they violate clearly established law. Again, the clearly established law paradigm Plaintiffs presented in their Response encapsulates outright denials and refusals of medical care, which is insufficient to demonstrate to Johnston that her actions, as alleged by Plaintiffs in this case, violated Decedent's clearly established rights. *See Mem*. [102] at 9-11. Here, too, Johnston enjoys qualified immunity, which means Movants do as well. Since Plaintiffs have not shown a constitutional violation by Johnston, they cannot state a supervisory-liability claim against Movants. Accordingly, this Court should dismiss all such claims.

## CONCLUSION

All in all, Plaintiffs fail to "make allegations that take the claim from conclusory to factual and beyond possible to plausible." *Carrillo v. Buendia*, No. 2:20-cv-28, 2020 WL 4584380, *1 (S.D. Tex. Aug. 10, 2020). Therefore, for the reasons stated above, as well as those in Movants' pending Motion [101] and Memorandum [102], Sheriff Joe Berlin and Jennifer Henderson respectfully request this Court dismiss Plaintiffs' claims against them in their individual capacity, with prejudice.

**DATE:** November 23, 2023.

                                                Respectfully submitted,

                                                **SHERIFF JOE BERLIN, AND JENNIFER HENDERSON**

                                                By:    /s/ *Lance W. Martin*
                                                               One of Their Attorneys

WILLIAM R. ALLEN (MSB #100541)
LANCE W. MARTIN (MSB #105203)
Allen, Allen, Breeland & Allen, PLLC
214 Justice Street; P. O. Box 751
Brookhaven, MS 39602
Tel: 601-833-4361 Fax: 601-833-6647
wallen@aabalegal.com
lmartin@aabalegal.com

**CERTIFICATE**

I, the undersigned of Allen, Allen, Breeland & Allen, PLLC, one of the attorneys for Defendants Sheriff Joe Berlin and Jennifer Henderson, hereby certify that on this day, I filed the foregoing Reply to Plaintiffs' Response in Opposition to Second Motion for Judgment on the Pleadings based on Qualified Immunity with the Clerk of the Court using the ECF system, which gave notice of the same to the following:

Robert McDuff, Esq.  
The Law Office of Robert McDuff  
767 North Congress Street  
Jackson, MS 39202  
rbm@mcdufflaw.com  

Stephen J. Haedicke-PHV  
Law Office of Stephen J. Haedicke, LLC  
1040 St. Ferdinand Street  
New Orleans, LA 70117  
stephen@haedickelaw.com  

*Attorneys for Plaintiff*

Bethany A. Tarpley, Esq.  
Daniel J. Griffith, Esq.  
JACKS | GRIFFITH | LUCIANO, P.A.  
P. O. Box 1209  
Cleveland, MS 38732  
btarpley@jlpalaw.com  
dgriffith@jlpalaw.com  

*Attorneys for Mann, Sgt. Jesse James,*  
*Deputy Colton Dennis, and Carol Johnston*

Robert J. Dambrino, III (MSB #5783)  
Gore, Kilpatrick & Dambrino, PLLC  
2000 Gateway Drive  
Grenada, MS 38901  
rdambrino@gorekilpatrick.com  

*Attorney for Mekedes Coleman*

This, the 23d day of November, 2023.

/s/ *Lance W. Martin*  
OF COUNSEL