## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

**CORBEY JONES**                                                        **PLAINTIFF**

**VERSUS**                                         Civ. No. 2:22-CV-93-KS-MTP

**JONES COUNTY, MS; SHERIFF JOE**
**BERLIN; DEPUTY JAMES MANN; SGT.**
**JESSE JAMES; DEPUTY COLTON**
**DENNIS; CAROL JOHNSTON;**
**JANET HENDERSON; AND**
**DEPUTY MEKEDES COLEMAN**                          **DEFENDANTS**

### MEMORANDUM IN SUPPORT OF SECOND MOTION TO DISMISS

COMES NOW Deputy Mekedes Coleman, one of the Defendants herein, by and through counsel, and files this, her *Memorandum in Support of Second Motion to Dismiss*, incorporating herein by reference, as if fully set forth herein in words and figures, the arguments and authorities set forth in the *Second Motion to Dismiss* being filed simultaneously herewith, and would show unto the court as follows:

### STATEMENT OF FACTS

This Defendant, Deputy Mekedes Coleman (hereinafter referred to as "Deputy Coleman" or "Defendant") was recently brought in as a Defendant on April 28, 2023, when Plaintiff filed his *First Amended Complaint* [Doc. 52] with consent of the parties, but beyond the December 15, 2022, deadline set for joinder of parties or amendments to the pleadings scheduled by this Court in its Case Management Order [Doc. 26]. The allegations in the *Second Amended Complaint* [Doc. 94] against this Defendant mirror the allegations in the *First Amended Complaint* [Doc. 52]. In his *Second Amended Complaint*, Plaintiff alleges:

> [a]t all pertinent times, these Defendants were employed by Sheriff Joe Berlin
> and/or Jones County as correctional officers assigned to the Jones County Adult

Detention Center. At all relevant times these Defendants were acting under color of law and in the course and scope of their employment.

*Id.*

Specifically, as to this Defendant, the *Second Amended Complaint* states:

Defendant MEKEDES COLEMAN was assigned to the Detention Center Control Room on the morning of January 9, 2021, where one of her jobs was to monitor the continuous video surveillance feed coming from Andrew's cell. On information and belief, COLEMAN observed Andrew's obvious medical distress via the surveillance video coming from Andrew's cell. However, COLEMAN took no action to obtain medical help for Andrew despite her awareness of his obvious and serious medical distress. The same is true for any other deputies who worked or were present during relevant times in the control room that morning.[1]

Deputy Coleman is not specifically referenced at any other time throughout Plaintiff's lengthy complaint, and said allegations do not state a violation of "clearly established law," nor has he met his burden of proving deliberate indifference on the part of Deputy Coleman. Accordingly, Deputy Coleman is entitled to a dismissal of Plaintiff's Constitutional Claims based upon qualified immunity.

## STANDARD OF LAW: MOTION TO DISMISS

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure raises an issue of law, which is reviewed under a de novo standard. *Cook v. Brown,* 909 So.2d 1075, 1077–78 (Miss. 2005). A Rule 12(b)(6) motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint. *Id.* at 1078 (citing *Little v. Miss. Dep't of Human Servs.,* 835 So.2d 9, 11 (Miss. 2002). In conducting that review, the court accepts all well-pled facts as true, drawing "all reasonable inferences in favor of the nonmoving party." *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023); citing *Harmon v. City of Arlington, Texas*, 16 F.4th 1159, 1162-63 (5th Cir. 2021) (*quoting Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc)). But the court

---

[1] *Second Amended Complaint [Doc. 94]*, ¶69, p. 15 of 23; see also ¶¶ 73 and 77.

does not "presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement." *Id*. A pleading's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Moreover, well-pled facts that are "merely consistent with an entitlement to relief, that are, equally suggestive of legal and illegal conduct, do not suffice." *Id.* "The complaint must allege facts plausibly suggesting illegal conduct such that the allegations are no longer in neutral territory." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") A pleading that only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" does not meet the standards of *Rule 8(a)(2)*. *Iqbal,* 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 555).

In the instant case, Plaintiff has failed to state a claim entitling him to relief against this Defendant, Deputy Coleman. Fed. Civ. Pro. Rule 12(b)(6). Movant herein, Deputy Coleman, in her individual capacity, is shielded from liability for the acts committed within the course and scope of her employment[2] by the immunities afforded by the doctrine of Qualified Immunity—as Mississippi and Federal Courts have recognized since the adoption of the doctrine.

## QUALIFIED IMMUNITY

"Qualified immunity is a complete defense" to a federal constitutional claim. *Brewer v. Hayne*, 860 F.3d 819, 824 (5th Cir. 2017). When it is raised at the pleading stage, "[h]eightened

---

[2] *Second Amended Complaint [Doc. 94]*, ¶8, pp. 3, 4 of 23. ("At all relevant times these Defendants were acting under color of law and in the course and scope of their employment.")

pleading" is required. *Reyes v. Sazan,* 168 F.3d 158, 161 (5ᵗʰ Cir. 1999). The plaintiff must provide "allegations of fact focusing specifically on the conduct of the individual who caused the plaintiff's injury." *Id.* Plaintiffs must "rest their complaint on more than conclusions alone and plead their case with precision and factual specificity." *Nunez v. Simms,* 341 F.3d 385, 388 (5th Cir. 2003).

An official is entitled to qualified immunity if (1) "no constitutional violation occurred" or (2) "the conduct 'did not violate law clearly established at the time.'" *Davis v. Hodgkiss*, 11 F.4ᵗʰ 329, 333 (5ᵗʰ Cir. 2021). The second prong of the qualified immunity test "is better understood as two separate inquiries," to determine (1) whether the allegedly violated constitutional right was "*clearly established at the time of the incident"*; and (2) if so, whether the defendant's conduct was "objectively unreasonable in the light of that then clearly established law." *Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 305-06 (5ᵗʰ Cir. 2020); *See also Tarver v. City of Edna*, 410 F.3d 745, 750 (5ᵗʰ Cir. 2005). If the defendant's conduct is objectively reasonable, then the defendant is entitled to qualified immunity even if his conduct "violate[d] a clearly established federal right." *Modica v. Taylor*, 465 F.3d 174, 179 (5ᵗʰ Cir. 2006). *See also Elizondo v. Parks*, 254 Fed. Appx. 329, 332 (5ᵗʰ Cir. 2007). A court may consider either condition first, and if either condition is not met, then the Defendants are immune. *Estate of Bonilla v. Orange Cty.*, 982 F.3d 298, 306 (5th Cir. 2020); (citing *Morgan,* 659 F.3d at 385).

## QUALIFIED IMMUNITY: "CLEARLY ESTABLISHED"

Here, we need not consider the first prong of qualified immunity because Plaintiff cannot satisfy the second. *Id.* To begin the analysis, we must properly frame the right at issue "in light of the specific context of the case." *Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021) (noting courts must be careful not to "define clearly established law at a high level of generality"). Considering the specific factual context of this case, the right at issue here is: whether a Sheriff's Deputy

violates the Fourteenth Amendment by failing to recognize an inmate's HIV symptoms from the surveillance camera monitor in the camera-control room, when said symptoms ultimately lead to the inmate's death.[3]

The Fifth Circuit recently reaffirmed the scope of the "clearly established" inquiry of the Qualified immunity standard, citing multiple United States Supreme Court authorities, as follows:

> The "clearly established" prong is difficult to satisfy.  A right is "clearly established" only if it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right.  We must define the right with specificity.  A case directly on point is not required, but existing precedent must have placed the statutory or constitutional question beyond debate.  In other words, there must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful.  This rule is a demanding standard, and the Supreme Court repeatedly has told us not to define clearly established law at a high level of generality.  Ultimately, the dipositive question is whether the violative nature of the *particular* conduct is clearly established.  We undertake that inquiry in the light of the specific context of the case, not as a broad general proposition.

*Cunningham v. Castloo,* 983 F.3d 185, 191 (5th Cir. 2020) (internal citations and quotation marks omitted).

In *Crawford v. Desoto Cty. Sheriff's Dep't,* the Northern District of Mississippi noted that, in the qualified immunity context, "[w]e do not require that an official demonstrate that she did not violate clearly established federal rights; our precedent places that burden on plaintiffs." 419 F. Supp. 3d 965, (N.D. Miss. 2020); quoting *Pierce v. Smith,* 117 F.3d 866, 872 (5th Cir. 1997). In the qualified immunity context, "although nominally a defense, the plaintiff has the burden to negate the defense once properly raised." *Brown v. Wilkinson Cnty. Sheriff's Dep't,* (S.D. Miss. 2017); citing *Poole v. Shreveport,* 691 F.3d 624, 627 (5th Cir. 2012). The burden is on the plaintiff

---

[3] *Second Amended Complaint [Doc. 94]*, ¶69, p. 15 of 23.

"to find a case in his favor that does not define the law at a high level of generality." *Rich v. Palko*, 920 F.3d 288, 294 (5ᵗʰ Cir. 2019).

"Further, the Supreme Court stated in *City and County of San Francisco v. Sheehan,* to establish that any supportive precedent was 'clearly established,' the plaintiff must be able to cite either a decision from that Court, or a "robust consensus of cases of persuasive authority in the Courts of Appeals." *Crawford,* 419 F. Supp. 3d at 965. "And a never-established right cannot be a clearly established one." *Fisher v. Moore*, 62 F.4th 912, 913 (5th Cir. 2023); *See Salazar v. Molina*, 37 F.4th 278, 286 (5th Cir. 2022), *cert.denied*, No. 22-564, 2023 WL 3046124 (Apr. 24, 2023) (mem.) ("An *unpublished circuit* case cannot clearly establish the law for purposes of qualified immunity.")

Further complicating Plaintiff's burden, the Supreme Court recently held "it's not clear that our precedents can clearly establish the law." *See Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7 (2021) (per curiam) (assuming published circuit precedent can in theory clearly establish law but only to reverse the Ninth Circuit's reliance on it). Plaintiff must "rest his complaint on more than conclusions alone and plead his case with precision and factual specificity." *Nunez,* 341 F.3d at 388. Plaintiff must provide "allegations of fact focusing specifically on the conduct of the individual who caused the plaintiffs' injury." *Id.* In other words, a "plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeats a qualified immunity defense with equal specificity." *Backe v. Leblanc,* 691 F.3d 645, 648 (5th Cir. 2012). If the plaintiff fails to establish that the alleged constitutional right was "clearly established" then the official is entitled to dismissal based upon qualified immunity. *Brewer*, 860 F.3d at 826.

As to the second prong of qualified immunity, or whether Deputy Coleman violated Mr. Jones' *clearly established* constitutional rights by failing to recognize his HIV symptoms from the surveillance camera monitor in the camera-control room, when said symptoms are alleged to have caused his death.[4] "A right is clearly established if it is one that is sufficiently clear that *every* reasonable official would have understood that what he is doing violates that right." *Cope*, 3 F.4th at 204 (emphasis added) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)). Plaintiff bears the "heavy burden" to show that the right Deputy Coleman allegedly violated was clearly established. *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). And a right is only clearly established where the relevant precedent "has placed the constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). In short, Deputies are entitled to qualified immunity except "the plainly incompetent or those who knowingly violate the law." *Morrow*, 917 F.3d at 876.

In *Reed v. Nacogdoches Cty.*, a factually similar case that considered "whether it violates the Fourteenth Amendment for a jailer working in the control room of a jail (like Mekedes Coleman) to ignore emergency intercom calls for three minutes and fourteen seconds while handling a personal phone call." No. 22-40126, 2023 U.S. App. LEXIS 12410, at *7-8 (5th Cir. May 19, 2023). The Court cited *Stewart v. Guzman,* F.App'x 425, 432 (5th Cir. 2014) noting:

> In *Stewart*, jail officials ignored an emergency intercom on four separate dates, watched and ignored an inmate lying on the floor, and ignored other inmates knocking on the cell door, resulting each time in the inmate having an asthma attack. *Id.* at 426-29. The jail officials there also "intentionally disregarded" the inmate's "established treatment plan." *Id.* at 426, 432. But here, unlike in *Stewart*, Fuentes ignored the emergency intercom on only one date. And in any event, there is no evidence that Fuentes *intentionally* disregarded anything. Thus, *Stewart* is not close enough factually to give fair warning to a reasonable officer in Fuentes's shoes

---

[4] *Second Amended Complaint [Doc. 94]*, ¶69, p. 15 of 23.

that her conduct in ignoring the emergency intercom—without more—violated the Constitution.

*Reed v. Nacogdoches Cty.*, No. 22-40126, 2023 U.S. App. LEXIS 12410, at \*7 (5th Cir. May 19, 2023); citing *Stewart v. Guzman,* F.App'x 425, 432 (5th Cir. 2014).

But here*, unlike in *Stewart*, or *Reed v. Nacogdoches Cty.,* it is not alleged that Deputy Coleman ignored emergency calls, but rather that she failed to recognize Plaintiff's medical symptoms from the surveillance camera monitor in the camera-control room.[5] *Id.* And in any event, there is no evidence or allegation that Deputy Coleman *intentionally* disregarded anything.[6]

Furthermore, it was not until July of 2021, nearly seven (7) months after Mr. Jones' death[7] that the 5th Circuit held (for the first time) that failing to promptly call for emergency assistance in the face of a *known*, serious medical emergency violates the Constitution. *Reed*, No. 22-40126, 2023 U.S. App. LEXIS 12410, at \*7-8 (5th Cir. May 19, 2023); *See Cope*, 3 F.4th at 209 ("For these reasons, we now make clear that promptly failing to call for emergency assistance when a detainee faces a known, serious medical emergency—*e.g.*, suffering from a suicide attempt— constitutes unconstitutional conduct."). Thus, it is impossible for Plaintiff to show that relevant precedent "had placed the constitutional question beyond debate" at the time of the incident. *Id.* (*quoting Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

In *Reed,* 5th Circuit noted, "[e]ven after *Cope*, it's not clear that our precedents can clearly establish the law." *Id. See Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7 (2021) (per curiam)

---

[5] *Second Amended Complaint [Doc. 94]*, ¶69, pg. 15 of 23.

[6] *Second Amended Complaint [Doc. 94]*, ¶ 68, pg. 15 of 23 (Defendant's MANN, JAMES, and DENNIS personally observed Andrew's obvious medical distresses…"); see also

[7] *Second Amended Complaint [Doc. 94]*, ¶ 73 pg. 16. ("73. Moreover, independent of the ultimate cause of death, the failure of Defendants MANN, JAMES, DENNIS and/or COLEMAN to report Andrew's condition on the morning of January 9, 2021, and to take steps that would have led to medical treatment, including transport to the emergency room of a hospital, caused or contributed to his death and his pre-death suffering. Andrew's life would have been saved, and his pre-death suffering would have been mitigated, had he been promptly transported that morning to an emergency room for lifesaving treatment."

(assuming published circuit precedent can in theory clearly establish law but only to reverse the Ninth Circuit's reliance on it). "And it's also not clear that every reasonable officer would conclude that misinterpreting inmate behavior-which *might* be alerting to a medical emergency-is the same as an officer *knowing* for a fact that a medical emergency is ongoing and not calling for emergency assistance like the officer in *Cope*." *Id.*

Even assuming Deputy Coleman's actions in failing to identify Mr. Jones' medical condition violated the Fourteenth Amendment, Plaintiff points to no controlling case law that clearly governs this situation. On the contrary, this Court's recent decision in *Aguirre v. City of San Antonio*, 995 F.3d 395 (5th Cir. 2021), underscores the lack of clearly established law surrounding delays in administering medical treatment. There, the Court held that officers who delayed CPR for three minutes while retrieving medical equipment and performing a "sternum rub" on a man who was not breathing did not act with deliberate indifference. *Id.* at 420-21. The Court reasoned that while "these measures may have been inadequate, Plaintiffs [did] not present any evidence that the Officers knew they were insufficient and intentionally failed to do more out of indifference to [the man's] well-being." *Id.* at 421.

*Aguirre* illustrates that where officials elect to do *something* rather than *nothing*, it is difficult or impossible to say they acted with "indifference" much less *deliberate* indifference. *Reed*, No. 22-40126, 2023 U.S. App. LEXIS 12410, at *10 (5th Cir. May 19, 2023). The court ultimately found "[t]hus, even assuming a constitutional violation, we conclude [Defendant] is entitled to qualified immunity." *Reed,* No. 22-40126, 2023 U.S. App. LEXIS 12410, at *12 (5th Cir. May 19, 2023).

In the instant case, taking the allegations in Plaintiff's *Second Amended Complaint* [Doc. 94], as true, on the date of the incident, Deputy Coleman observed three different deputies enter

Mr. Jones' cell,[8] of which, two deputies entered for the purpose of administering medication to Mr. Jones.[9] "Prison officials who are not medical professionals are entitled to rely on the medical opinions of medical professionals." *Clark v. Banks,* No. 1:16-cv-00208-HSO-JCG, 2018 WL 1866619, at *4 (S.D. Miss. Jan. 2, 2018) (quotation omitted), *report and recommendation adopted by* 2018 WL 783075, at *3 (S.D. Miss. Feb. 8, 2018) (quotation and alteration omitted). Thus, Deputy Coleman had "no authority or responsibility to evaluate [Mr. Jones] or order any type of medical treatment."[10] *Id.* (quotation omitted). In other words, regardless of whether Deputy Coleman knew about the extent of Mr. Jones's injuries, she is "not responsible for the treatment decisions made by medical personnel" at Jones County Adult Detention Center.[11] *Id.* Deputy Coleman is entitled to qualified immunity against Mr. Jones's deliberate-indifference claim for this reason alone. *Id.*

The allegations in Plaintiff's complaint show that while Mr. Jones was incarcerated between December 9, 2020 and the day of his death, January 9, 2021, Mr. Jones was assessed and treated for an HIV infection and numerous psychological disorders;[12] the assessment on December 18, 2020, showed a positive HIV diagnosis,[13] he was offered an anti-viral medication and

---

[8] *Second Amended Complaint* [Doc. 94], ¶69, pg. 15 of 23.

[9] *Second Amended Complaint* [Doc. 94], pg. 13 of 23.

[10] *Second Amended Complaint* [Doc. 94], ¶ 9, p. 4 of 23. ("PATRICIA CAROL JOHNSTON…, who is a licensed practical nurse employed to provide medical care to inmates at the Jones County Detention Center…She was the final policymaker with respect to medical care and medication at the detention center."); and see *Second Amended Complaint* [Doc. 94], ¶ 20, pg. 6 of 23 (Johnston…was the sole person in charge of acquiring and providing medications to inmates who needed them and for arranging for inmates to see outside medical providers when necessary.")

[11] *Id.*

[12] *Second Amended Complaint* [Doc. 94], pgs. 7-11 of 23.

[13] *Id.*

scheduled for a follow-up appointment on January 4, 2021,[14] which he attended,[15] and on the day of the incident, Deputy Coleman, Defendant herein, witnessed Deputies administer medication to the decedent.[16] Plaintiff's desire for some other unidentified treatment after the incident does not render inconsequential the medical care that [decedent] did receive." *See Clark*, 2018 WL 1866619, at *6. In any event, there is no guarantee that a trip to the hospital would have remedied Mr. Jones's alleged ailments.[17] *Id*.

Finally, Plaintiff's desire for some other unidentified treatment after the incident does not rise to the level of a constitutional violation because it represents a "mere disagreement with the medical treatment provided." *See Burley v. Davis*, No. 6:17-cv-00490, 2020 WL 2487054, at *7 (E.D. Tex. Feb. 20, 2020). A plaintiff "has no constitutional right to the 'best' medical treatment available." *Irby v. Cole*, No. 4:03-cv-00141-WHB-JCS, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006) (*quoting McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978)). "A prisoner is not entitled to the treatment that judges might prefer, or medical treatment or therapy equivalent to that provided by Medicaid or Medicare." *Id*. "Moreover, the Court is not in a position to second-guess the medical judgment of a trained physician." *Clark*, 2018 WL 1866619, at *6. As a result,

---

[14] *Second Amended Complaint* [Doc. 94], ¶ 39, pg. 10 of 23.

[15] *Id*.

[16] *Second Amended Complaint* [Doc. 94], ¶¶ 54-59, pgs. 13-14 of 23.

[17] *Second Amended Complaint* [Doc. 94], ¶ 72 ("Andrew was suffering from an infection secondary to uncontrolled HIV/AIDS that resulted in his death on January 9, 2021, and in his pre-death suffering. Because Andrew's HIV was untreated, it had diminished his immune system such that he could not fight off secondary infections, one or more of which resulted in his death and his pre-death suffering. Thus, while HIV by itself did not cause the death, the untreated HIV was the root cause of the death because it led to the infection or infections that actually killed him and led to his pre-death suffering. The antiretroviral HIV drugs that had been prescribed to him by the doctor at the Hattiesburg Clinic would have prevented his death and prevented or mitigated his pre-death suffering. Defendant JOHNSTON failed to provide these drugs to Andrew despite her awareness that he had received a prescription from the HIV doctor.")

Mr. Jones has failed to allege facts showing a violation of his constitutional rights by Deputy Coleman.

Instead, the evidence shows that he was evaluated by an HIV specialist at his pre-scheduled appointment on December 18, 2020;[18] taken to his follow-up appointment for treatment of HIV on January 4, 2021;[19] provided with the medication furnished by his family;[20] and was checked on at least three times between 6:00 a.m. and 10:53 a.m. on the day of his death.[21] On this record, Mr. Jones has failed to state a constitutional claim against Deputy Coleman. Thus, Deputy Coleman is entitled to qualified immunity on Plaintiff's Fourteenth Amendment claim.

## <u>GROUP PLEADING</u>

Plaintiff's allegation also suffers from the distinct problem of group pleading: he simply faults Defendants as a group without factual material suggesting that any particular defendant violated the constitutional rights of Mr. Jones. *Armstrong,* 60 F.4th at 274-75. Plaintiff's allegations are independently insufficient for that reason since a § 1983 plaintiff "must plead that each Government-official defendant, though the official's own individual actions, has violated the Constitution." *Id.* ((*quoting Iqbal,* 556 U.S. at 676); (see also *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.,* 365 F.3d 353, 365 (5th Cir. 2004) ("[W]e do not construe allegations contained in

---

[18] *Second Amended Complaint* [Doc. 94], ¶ 23, pg. 7 of 23 (Before he was arrested an appointment had been scheduled for Andrew at the Hattiesburg Clinic for December 18, 2020, to see an infectious disease specialist for treatment of his HIV.") *Second Amended Complaint* [Doc. 94], ¶ 25, pg. 7 of 23 (Johnston knew that the December 18th appointment was for Andrew to see a doctor to obtain treatment for HIV. She gave approval for Andrew to be transported to this appointment.")

[19] *Second Amended Complaint* [Doc. 94], ¶ 38, pg. 10 of 23 (At some point on January 4, 2021 [*sic*], the Hattiesburg Clinic Physician saw Andrew again. The records state that Andrew was seen for an HIV follow-up.")

[20] *Second Amended Complaint* [Doc. 94], ¶ 42, pg. 10 of 23.

[21] *Second Amended Complaint* [Doc. 94], ¶ 67, pg. 15 of 23 (Defendant's MANN, JAMES, and DENNIS personally observed Andrew's obvious medical distresses…")

the Complaint against the 'defendants' as a group as properly imputable to any particular individual defendant unless the connection between the individual defendant and the [illegal conduct] is specifically pled.")).

## **CONCLUSION**

WHEREFORE, PREMISES CONSIDERED, Defendant, Deputy Mekedes Coleman, pursuant to Rule 12 of Federal Rules of Civil Procedure, respectfully moves the Court to enter its' Order dismissing Plaintiff's *Second Amended Complaint* [Doc. 94], in her favor as to Plaintiff's federal constitutional claims and further directing that there is no just reason for delay in the entry of final judgment on the dismissal of such claims as against this defendant under Rule 54(b) of the Federal Rules of Civil Procedure.

RESPECTFULLY SUBMITTED this the 6th day of March, 2024.

Deputy Mekedes Coleman
Defendant

By:*/s/Wesley C. Pinson*
Wesley C. Pinson (MSB#106508)
Robert J. Dambrino III (MSB#5783)
Attorneys for Defendant Deputy
Mekedes Coleman

Of Counsel:

Gore, Kilpatrick & Dambrino PLLC
Attorneys at Law
P.O. Box 901
Grenada, MS 38902-0901
Ph.     662.226.1891
Fx.     662.226.2237
Eml.    wpinson@gorekilpatrick.com
Eml.    rdambrino@gorekilpatrick.com

## CERTIFICATE OF SERVICE

I, Wesley C. Pinson, one of the attorneys for Defendant, do hereby certify that I served the above and foregoing pleading upon all counsel of record via the Court's ECF/CMF system, which will send notice of filing to all counsel of record.

This the 6th day of March, 2024.

/s/Wesley C. Pinson
Wesley C. Pinson (MSB#106508)