IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**CORBEY JONES**                                                                                      **PLAINTIFF**

**VERSUS**                                                                      **Civ. No. 2:22-CV-93-KS-MTP**

**JONES COUNTY, MS; SHERIFF JOE
BERLIN; DEPUTY JAMES MANN; SGT.
JESSE JAMES; DEPUTY COLTON
DENNIS; CAROL JOHNSTON;
JANET HENDERSON; AND
DEPUTY MEKEDES COLEMAN**                                              **DEFENDANTS**

**REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO
SECOND MOTION TO DISMISS**

COMES NOW Deputy Mekedes Coleman, one of the Defendants herein, by and through counsel, and files this, her *Reply to Plaintiff's Response in Opposition to Second Motion to Dismiss*, incorporating herein by reference, in their entirety, as if fully set forth herein in words and figures, the facts, arguments, standards of law, and authorities as set forth in her *Second Motion to Dismiss* [Doc. 110], and *Memorandum in Support of Second Motion to Dismiss* [Doc. 111], and would show unto the court:

**MOTION TO DISMISS**

The court accepts all well-pled facts as true, drawing "all reasonable inferences in favor of the nonmoving party." *Armstrong v. Ashley*, 60 F.4th 262 (5th Cir. 2023); *Harmon v. City of Arlington, Texas,* 16 F.4th 1159, 1162-63 (5th Cir. 2021) (*quoting Morgan v. Swanson,* 659 F.3d 359, 370 (5th Cir. 2011) (en banc)). But the court does not "presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement." *Id.* A pleading's factual allegations "must be enough to raise a right to relief above

the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Moreover, well-pled facts that are "merely consistent with" an entitlement to relief, that [are], equally suggestive of legal and illegal conduct, do not suffice. *Id.* The complaint must allege facts "plausibly suggesting" illegal conduct such that the allegations are no longer in "neutral territory." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") A pleading that only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" does not meet the standards of *Rule 8(a)(2)*. *Iqbal,* 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 555).

## **QUALIFIED IMMUNITY**

Plaintiff's argument that Qualified Immunity has been in error since its inception due to the "Notwithstanding Clause" is without merit. *Plaintiff's Response in Opposition to Defendants' Second Motion to Dismiss,* [Doc. 114], pages 7-13. Plaintiff states "Judge Willett of the Fifth Circuit recently described these arguments as 'game-changing' arguments in his concurrence in *Rogers v. Jarrett,* 63 F.4th 971, 979-981 (5th Cir. 2023)." *Id.* However, Plaintiff omits the next passage of Judge Willet's concurrence which provides:

> It seems a tall order to square the modern qualified-immunity regime with Congress's originally enacted language. But however seismic the implications of this lost-text research, "'[a]s middle-management circuit judges,' we cannot overrule the Supreme Court." Only that Court can definitively grapple with § 1983's enacted text and decide whether it means what it says—and what, if anything, that means for § 1983 immunity jurisprudence.

*Rogers v. Jarrett,* 63 F.4th 971, 979-981 (5th Cir. 2023); citing *Sims v. Griffin*, 35 F.4th 945, 951 n.17 (5th Cir. 2022) (quoting *Whole Woman's Health v. Paxton*, 978 F.3d 896, 920 (5th Cir. 2020) (Willett, J., dissenting), *rev'd en banc*, 10 F.4th 430 (5th Cir. 2021)).

Similarly, Plaintiff's argument regarding "Subjective vs. Objective Deliberate Indifference" is without merit, as Plaintiff concedes. *Plaintiff's Response in Opposition to Defendants' Second Motion to Dismiss,* [Doc. 114], pgs. 13-14. (However, the Plaintiff acknowledges that the Fifth Circuit disagrees with this proposition. *Cope*, 3 F.4th at 207 n. 7 (rejecting proposition that *Kingsley* abrogated circuit precedent with respect to § 1983 medical claims)).

"Qualified immunity is a complete defense" to a federal constitutional claim. *Brewer v. Hayne*, 860 F.3d 819, 824 (5th Cir. 2017). When it is raised at the pleading stage, "[h]eightened pleading" is required. *Reyes v. Sazan,* 168 F.3d 158, 161 (5th Cir. 1999). The plaintiff must provide "allegations of fact focusing specifically on the conduct of the individual who caused the plaintiffs' injury." *Id.* Plaintiffs must "rest their complaint on more than conclusions alone and plead their case with precision and factual specificity." *Nunez v. Simms,* 341 F.3d 385, 388 (5th Cir. 2003).

An official is entitled to qualified immunity if (1) "no constitutional violation occurred" or (2) "the conduct 'did not violate law clearly established at the time.'" *Davis v. Hodgkiss*, 11 F.4th 329, 333 (5th Cir. 2021). The second prong of the qualified immunity test "is better understood as two separate inquiries," to determine (1) whether the allegedly violated constitutional right was "*clearly established at the time of the incident"*; and (2) if so, whether the defendant's conduct was "objectively unreasonable in the light of that then clearly established law." *Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 305-06 (5th Cir. 2020); *See also Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005). If the defendant's conduct is objectively reasonable, then the defendant is entitled to qualified immunity even if his conduct "violate[d] a clearly established federal right." *Modica v. Taylor*, 465 F.3d 174, 179 (5th Cir. 2006). *See also Elizondo v. Parks*, 254 Fed. Appx. 329, 332 (5th Cir. 2007). A court may consider either condition first, and if either

condition is not met, then the Defendants are immune. *Estate of Bonilla v. Orange Cty.*, 982 F.3d 298, 306 (5th Cir. 2020); (citing *Morgan,* 659 F.3d at 385).

## **CLEARLY ESTABLISHED**

The Fifth Circuit recently reaffirmed the scope of the "clearly established" inquiry of the Qualified immunity standard, citing multiple United States Supreme Court authorities, as follows:

> The "clearly established" prong is difficult to satisfy. A right is "clearly established" only if it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. We must define the right with specificity. A case directly on point is not required, but existing precedent must have placed the statutory or constitutional question beyond debate. In other words, there must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful. This rule is a demanding standard, and the Supreme Court repeatedly has told us not to define clearly established law at a high level of generality. Ultimately, the dipositive question is whether the violative nature of the *particular* conduct is clearly established. We undertake that inquiry in the light of the specific context of the case, not as a broad general proposition.

*Cunningham v. Castloo,* 983 F.3d 185, 191 (5th Cir. 2020) (internal citations and quotation marks omitted).

In *Crawford v. Desoto Cty. Sheriff's Dep't,* the Northern District of Mississippi noted that, in the qualified immunity context, "[w]e do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden on plaintiffs." 419 F. Supp. 3d 965, (N.D. Miss. 2020); quoting *Pierce v. Smith,* 117 F.3d 866, 872 (5th Cir. 1997). In the qualified immunity context, "although nominally a defense, the plaintiff has the burden to negate the defense once properly raised." *Brown v. Wilkinson Cnty. Sheriff's Dep't*, (S.D. Miss. 2017); citing *Poole v. Shreveport,* 691 F.3d 624, 627 (5th Cir. 2012). The burden is on the plaintiff "to find a case in [his] favor that does not define the law at a high level of generality." *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019).

Plaintiff must "rest their complaint on more than conclusions alone and plead their case with precision and factual specificity." *Nunez,* 341 F.3d at 388. In other words, a "plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm she has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. Leblanc,* 691 F.3d 645, 648 (5th Cir. 2012). If the plaintiff fails to establish that the alleged constitutional right was "clearly established" then the official is entitled to dismissal based upon qualified immunity. *Brewer*, 860 F.3d at 826. As was the case in *Armstrong,* this claim should be dismissed because it lacks "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Armstrong,* 60 F.4th at 272; quoting *Iqbal*, 556 U.S. at 677.

The question of whether the law is "clearly established" must be "frame[d] … with specificity and granularity." *Morrow v. Meachum*, 917 F.3d 870, 874-75 (5th Cir. 2019). The "dispositive question is whether the violative nature of *particular* conduct is clearly established." *Id.* at 875. The plaintiff must provide "allegations of fact focusing specifically on the conduct of the individual who caused the plaintiffs' injury." *Id.* This is because "qualified immunity is inappropriate only where the official had 'fair notice'–in light of the specific context of the case, not as a broad general proposition–that his *particular* conduct was unlawful." *Id.* In other words, "existing precedent must have placed the statutory or constitutional question confronted by the official beyond debate." *Plumhoff v. Rickard,* 572 U.S. 765, 779 (2014). To establish that any supportive precedent was "clearly established," the plaintiff must be able to cite either a decision from that Court or a "robust consensus of cases of persuasive authority in the Courts of Appeals." *Crawford v. Desoto Cty. Sheriff's Dep't,* 419 F. Supp. 3d 965, (N.D. Miss. 2020); quoting *San*

*Francisco v. Sheehan,* 575 U.S. 600 (2015). And "a never-established right cannot be a clearly established one." *Fisher v. Moore*, 62 F.4th 912, 913 (5th Cir. 2023).

In this regard, Plaintiff broadly offers that "Fifth Circuit case law is clear that total inaction in the face of an inmate's obvious medical emergency violates clearly established law." *Response in Opposition to Second Motion to Dismiss* [Doc. 114]; *citing Dyer v. Houston,* 964 F.3d 374 (5th Cir. 2020) (Officers witnessed an inmate violently striking his head against the inside of *their* patrol car and testified that what the inmate was doing "certainly could" cause a head injury. Yet, the Officers sought no medical care for the inmate when they arrived at the jail, nor did they alert jail officers, who had no way of knowing what had happened en route to the jail, of the possibility that the inmate had seriously injured himself, and the jail sergeant was "[i]nformed by [the] transport officers [that] the inmate had been medically cleared at the scene."); and *Ford v. Anderson County,* 90 F.4th 736, 759-60 (5th Cir. 2024) (as this case was decided in 2024, it is not relevant in the 'clearly established' analysis. See *Cope*, 3 F.4th at 209 & 211; *citing Pearson v. Callahan,* 555 U.S. 223, 232, 129 S. Ct. 808, 816 (2009) (relevant precedent had placed the constitutional question beyond debate <u>at the time of the alleged incident</u>.); and *Thompson v. Upshur County Tex,* 245 F.3d 447 (5th Cir. 2001) (guard who was aware the plaintiff had elevated blood-alcohol content and had begun "to collide with objects in his cell, sometimes falling and striking his head against the window, floor, or concrete bench." Despite this knowledge, the guard ordered others not to take the inmate to the hospital without her permission. She then left the jail and told subordinates not to call her at home unless the inmate was "dying."); and *Easter v. Powell*, 467 F.3d 459 (5th Cir. 2006) (prison nurse was deliberately indifferent where she delayed providing heart medications to an inmate with a history of heart problems who was showing obvious signs of a heart attack.) However, at no point in Plaintiff's extensive briefing does he cite a single case,

from any jurisdiction, holding that a prison official who is monitoring extensive surveillance cameras violates clearly established law by failing to recognize an inmate's medical symptoms.

"A right is clearly established if it is one that is sufficiently clear that *every* reasonable official would have understood that what he is doing violates that right." *Cope*, 3 F.4th at 204 (emphasis added) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). Plaintiff bears the "heavy burden" to show that the right Deputy Mekedes Coleman allegedly violated was clearly established. *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). And a right is only clearly established where the relevant precedent "has placed the constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). In short, Deputies are entitled to qualified immunity except "the plainly incompetent or those who knowingly violate the law." *Morrow*, 917 F.3d at 876.

In *Reed v. Nacogdoches Cty.*, a factually similar case that considered "whether it violates the Fourteenth Amendment for a jailer working in the control room of a jail (like Mekedes Coleman) to ignore emergency intercom calls for three minutes and fourteen seconds while handling a personal phone call." No. 22-40126, 2023 U.S. App. LEXIS 12410, at *7-8 (5th Cir. May 19, 2023). The Court cited *Stewart v. Guzman,* F.App'x 425, 432 (5th Cir. 2014) noting:

> In *Stewart*, jail officials ignored an emergency intercom on four separate dates, watched and ignored an inmate lying on the floor, and ignored other inmates knocking on the cell door, resulting each time in the inmate having an asthma attack. *Id.* at 426-29. The jail officials there also "intentionally disregarded" the inmate's "established treatment plan." *Id.* at 426, 432. But here, unlike in *Stewart*, Fuentes ignored the emergency intercom on only one date. And in any event, there is no evidence that Fuentes *intentionally* disregarded anything. Thus, *Stewart* is not close enough factually to give fair warning to a reasonable officer in Fuentes's shoes that her conduct in ignoring the emergency intercom—without more—violated the Constitution.

*Reed v. Nacogdoches Cty.*, No. 22-40126, 2023 U.S. App. LEXIS 12410, at *7 (5th Cir. May 19, 2023); citing *Stewart v. Guzman,* F.App'x 425, 432 (5th Cir. 2014).

But here*,* unlike in *Stewart*, or *Reed v. Nacogdoches Cty.,* it is not alleged that Deputy Mekedes Coleman ignored emergency calls, but rather that she failed to recognize Plaintiff's

medical symptoms from the surveillance camera monitor in the camera-control room.[1] *Id.* And in any event, there is no evidence or allegation that Deputy Mekedes Coleman *intentionally* disregarded anything.[2]

As to Plaintiff's allegation that Defendant misquotes *Reed*, on page 24 of its *Response in Opposition to Second Motion to Dismiss* [Doc. 114], Defendant inadvertently omitted brackets around the emphasized phrase "misinterpreting inmate behavior." Thus, as the passage is directly on point to the issues of this case, and as Plaintiff takes issue with Defendant's characterization of *Reed*, the relevant portion is included below:

> We conclude Fuentes is entitled to qualified immunity. That is because Reed cannot point to a case that placed **[*8]** the constitutional question here beyond debate at the time of the incident in 2017. Reed's best case is *Stewart v. Guzman*, 555 F. App'x 425, 432 (5th Cir. 2014). An *unpublished circuit* case cannot clearly establish the law for purposes of qualified immunity. *See Salazar v. Molina*, 37 F.4th 278, 286 (5th Cir. 2022), *cert. denied*, No. 22-564, 2023 U.S. LEXIS 1770, 2023 WL 3046124 (Apr. 24, 2023) (mem.). But even if it could, *Stewart*'s facts aren't close to the facts here. In *Stewart*, jail officials ignored an emergency intercom on four separate dates, watched and ignored an inmate lying on the floor, and ignored other inmates knocking on the cell door, resulting each time in the inmate having an asthma attack. *Id.* at 426-29. The jail officials there also "intentionally disregarded" the inmate's "established treatment plan." *Id.* at 426, 432. But here, unlike in *Stewart*, Fuentes ignored the emergency intercom on only one date. And in any event, there is no evidence that Fuentes *intentionally* disregarded anything. Thus, *Stewart* is not close enough factually to give fair warning to a reasonable officer in Fuentes's shoes that her conduct in ignoring the emergency intercom—without more—violated the Constitution.
>
> Further, it was not until July 2021 that our court held that failing to promptly call for emergency assistance in the face of a *known*, serious medical emergency violates the Constitution. *See Cope*, 3 F.4th at 209 ("For these **[*9]** reasons, we now make clear that promptly failing to call for emergency assistance when a detainee faces a known, serious medical emergency—*e.g.*, suffering from a suicide attempt—constitutes unconstitutional conduct."); *id.* (specifically noting that the Fifth Circuit had not "spoken directly" to this issue previously). Even after *Cope*, it's not clear that our precedents can clearly establish the law. *See Rivas-Villegas v.*

---

[1] *Second Amended Complaint* [Doc. 94], ¶ 69, pg. 15 of 21.

[2] *Second Amended Complaint* [Doc. 94], ¶ 69, pg. 15 of 21 (Defendant's MANN, JAMES, and DENNIS personally observed Andrew's obvious medical distresses…")

> *Cortesluna*, 142 S. Ct. 4, 7, 211 L. Ed. 2d 164 (2021) (per curiam) (assuming published circuit precedent can in theory clearly establish law but only to reverse the Ninth Circuit's reliance on it). And it's also not clear that every reasonable officer would conclude that ignoring an emergency intercom—which *might* be alerting to a medical emergency—is the same as an officer *knowing* for a fact that a medical emergency is ongoing and not calling for emergency assistance like the officer in *Cope*.[3] Thus, Fuentes is entitled to qualified immunity on Reed's Fourteenth Amendment claim.

*Reed v. Nacogdoches Cty.*, No. 22-40126, 2023 U.S. App. LEXIS 12410, at *7 (5th Cir. 2023).

Even assuming Deputy Mekedes Coleman's actions in failing to identify Mr. Jones' medical condition violated the Fourteenth Amendment, Plaintiff points to no controlling case law that clearly governs this situation. On the contrary, this Court's recent decision in *Aguirre v. City of San Antonio*, 995 F.3d 395 (5th Cir. 2021), underscores the lack of clearly established law surrounding delays in administering medical treatment. There, the Court held that officers who delayed CPR for three minutes while retrieving medical equipment and performing a "sternum rub" on a man who was not breathing did not act with deliberate indifference. *Id.* at 420-21. The Court reasoned that while "these measures may have been inadequate, Plaintiffs [did] not present any evidence that the Officers knew they were insufficient and intentionally failed to do more out of indifference to [the man's] well-being." *Id.* at 421. Similarly, in this regard, Plaintiff presents no evidence or argument that Deputy Mekedes Coleman knew that the medication provided by Mr. Jones' family, and administered by other jail personnel, was insufficient and, further, that she intentionally failed to do more out of indifference to Mr. Jones' well-being. *Id.*

---

[3] "*Reed v. Nacogdoches Cty.*, No. 22-40126, 2023 U.S. App. LEXIS 12410, at Footnote 3 (5th Cir. May 19, 2023) (Reed also mentions an Eighth Circuit case and a Seventh Circuit case in an attempt to demonstrate a "robust consensus" of persuasive authority that ignoring emergency intercom calls violates clearly established law. *Turner v. Lt. Driver*, 848 F.3d 678, 686 (5th Cir. 2017); *see Gordon ex rel. Gordon v. Frank*, 454 F.3d 858, 863 (8th Cir. 2006); *Velez v. Johnson*, 395 F.3d 732, 735-36 (7th Cir. 2005). But in *Gordon*, the officers did more than ignore emergency intercom calls; they ignored an inmate telling them specifically that he couldn't breathe even though they *knew* that particular inmate "was on high observation." 454 F.3d at 864. And in *Velez*, the right at issue was "the right to be free from deliberate indifference to rape and assault," not medical assistance. 395 F.3d at 736. Neither of these cases helps Reed."

*Aguirre* illustrates that where officials elect to do *something* rather than *nothing*, it is difficult or impossible to say they acted with "indifference" much less *deliberate* indifference. *Reed*, No. 22-40126, 2023 U.S. App. LEXIS 12410, at *10 (5th Cir. 2023). The court ultimately found "[t]hus, even assuming a constitutional violation, we conclude [Defendant] is entitled to qualified immunity." *Id.* at *12.

In the instant case, taking the allegations in Plaintiff's *Second Amended Complaint* [Doc. 94], as true, on the date of the incident, Deputy Mekedes Coleman observed three different deputies enter Mr. Jones' cell,[3] of which, two deputies entered for the purpose of administering medication to Mr. Jones.[4] "Prison officials who are not medical professionals are entitled to rely on the medical opinions of medical professionals." *Clark v. Banks,* No. 1:16-cv-00208-HSO-JCG, 2018 WL 1866619, at *4 (S.D. Miss. Jan. 2, 2018) (internal quotation omitted), *report and recommendation adopted by* 2018 WL 783075, at *3 (S.D. Miss. Feb. 8, 2018) (quotation and alteration omitted). Deputy Mekedes Coleman had "no authority or responsibility to evaluate [Mr. Jones] or order any type of medical treatment."[5] *Id*. (internal quotation omitted). In other words, regardless of whether Deputy Mekedes Coleman knew about the extent of Mr. Jones's injuries, she is "not responsible for the treatment decisions made by medical personnel" at Jones County Adult Detention Center.[6] *Id*. Deputy Mekedes Coleman is entitled to qualified immunity against Mr. Jones's deliberate-indifference claim for this reason alone. *Id.*

---

[3] *Second Amended Complaint* [Doc. 94], ¶ 69, pg. 15 of 21.

[4] *Id.* at ¶ 56, pg. 13 of 21.

[5] *Id* at ¶ 9, p. 4 of 21. ("PATRICIA CAROL JOHNSTON…, who is a licensed practical nurse employed to provide medical care to inmates at the Jones County Detention Center…She was the final policymaker with respect to medical care and medication at the detention center."); and see *Id* at ¶ 20, pg. 6 of 21 (Johnston…was the sole person in charge of acquiring and providing medications to inmates who needed them and for arranging for inmates to see outside medical providers when necessary.")

[6] *Id.*

The allegations in Plaintiff's complaint show that while Mr. Jones was incarcerated between December 9, 2020 and the day of his death on January 9, 2021, Mr. Jones was assessed and treated for an HIV infection and numerous psychological disorders;[7] the assessment on December 18, 2020, showed a positive HIV diagnosis,[8] he was offered an anti-viral medication and scheduled for a follow-up appointment on January 4, 2021,[9] which he attended.[10] Further, per the allegations in the complaint, on the day of the incident, Deputy Mekedes Coleman, Defendant herein, witnessed Deputies: administer medication (furnished by Mr. Jones' family)[11] to Mr. Jones;[12] and check on him at least three times between 6:00 a.m. and 10:53 a.m. on the day of his death.[13] Plaintiff's desire for some other unidentified treatment after the incident does not render inconsequential the medical care that [decedent] did receive." *See Clark*, 2018 WL 1866619, at 6.

In any event, there is no guarantee that a trip to the hospital would have remedied Mr. Jones's alleged ailments.[14] *Id*. Plaintiff's desire for some other unidentified treatment after the incident does not rise to the level of a constitutional violation because it represents a "mere

---

[7] *Id.* at ¶¶ 22-28, 31-34, 38-43, pgs. 7-11 of 21

[8] *Id.*

[9] *Id.* at ¶ 39, pg. 10 of 21.

[10] *Id.*

[11] *Id.* at ¶¶ 43-44, pg. 10 of 21.

[12] *Id. see also* ¶56, pg. 13 of 21.

[13] *Id.* at ¶ 68, pg. 15 of 21 (Defendant's MANN, JAMES, and DENNIS personally observed Andrew's obvious medical distresses…")

[14] *Id.* at ¶ 72 ("HIV causes death by overwhelming and destroying a person's immune system such that they cannot fight off secondary infections. Andrew was suffering from an infection secondary to uncontrolled HIV/AIDS that resulted in his death on January 9, 2021, and in his pre-death suffering. Because Andrew's HIV was untreated, it had diminished his immune system such that he could not fight off secondary infections, one or more of which resulted in his death and his pre-death suffering. Thus, while HIV by itself did not cause the death, the untreated HIV was the root cause of the death because it led to the infection or infections that actually killed him and led to his pre-death suffering. The antiretroviral HIV drugs that had been prescribed to him by the doctor at the Hattiesburg Clinic would have prevented his death and prevented or mitigated his pre-death suffering. Defendant JOHNSTON failed to provide these drugs to Andrew despite her awareness that he had received a prescription from the HIV doctor.")

disagreement with the medical treatment provided." *See Burley v. Davis*, No. 6:17-cv-00490, 2020 WL 2487054, at *7 (E.D. Tex. 2020) (A plaintiff "has no constitutional right to the 'best' medical treatment available."); see *Irby v. Cole*, No. 4:03-cv-00141-WHB-JCS, 2006 WL 2827551, at *7 (S.D. Miss. 2006); *quoting McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978) ("A prisoner is not entitled to the treatment that judges might prefer, or medical treatment or therapy equivalent to that provided by Medicaid or Medicare.")

Furthermore, "it was not until July of 2021, [nearly seven (7) months after Mr. Jones' death],[15] that the 5th Circuit held that failing to promptly call for emergency assistance in the face of a <u>known</u>, serious medical emergency violates the Constitution." *Reed*, No. 22-40126, 2023 U.S. App. LEXIS 12410, at *7-8 (5th Cir. 2023) (emphasis added); *See Cope*, 3 F.4th at 209 ("Until today, we have not spoken directly on whether failing to call for emergency assistance in response to a serious threat to an inmate's life constitutes deliberate indifference.") Thus, it is not possible for Plaintiff to show that relevant precedent "had placed the constitutional question beyond debate at the time of the alleged incident." *Cope*, 3 F.4th at 209 & 211; *citing Pearson v. Callahan,* 555 U.S. 223, 232, 129 S. Ct. 808, 816 (2009).

As a result, Mr. Jones has failed to allege facts showing a violation of his constitutional rights by Deputy Mekedes Coleman. On this record, Mr. Jones has failed to state a constitutional claim against Deputy Mekedes Coleman. Thus, Deputy Mekedes Coleman is entitled to qualified immunity on Plaintiff's § 1983 claim.

---

[15] *Id.* at ¶ 72, pg. 16 of 21. ("…Andrew was suffering from an infection secondary to uncontrolled HIV/AIDS that resulted in his death on January 9, 2021…")

**GROUP PLEADING**

Plaintiff's allegation also suffers from the distinct problem of group pleading: he simply faults Defendants as a group without factual material suggesting that any particular defendant violated the constitutional rights of Mr. Jones. *Armstrong,* 60 F.4th at 274-75. Plaintiff's allegations are independently insufficient for that reason since a § 1983 plaintiff "must plead that each Government-official defendant, though the official's own individual actions, has violated the Constitution." *Id.* ((quoting *Iqbal,* 556 U.S. at 676); (see also *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 365 (5th Cir. 2004) ("[W]e do not construe allegations contained in the Complaint against the 'defendants' as a group as properly imputable to any particular individual defendant unless the connection between the individual defendant and the [illegal conduct] is specifically pled.")).

**CONCLUSION**

WHEREFORE, PREMISES CONSIDERED, Defendant, Deputy Mekedes Coleman, pursuant to Rule 12 of Federal Rules of Civil Procedure, respectfully moves the Court to enter its' Order dismissing Plaintiff's *Second Amended Complaint* [Doc. 94], in her favor as to Plaintiff's federal constitutional claims and further directing that there is no just reason for delay in the entry of final judgment on the dismissal of such claims as against this defendant under Rule 54(b) of the Federal Rules of Civil Procedure.

RESPECTFULLY SUBMITTED this the 25th day of March, 2024.

Deputy Mekedes Coleman
Defendant

By:*/s/Wesley C. Pinson*
    Wesley C. Pinson (MSB#106508)
    Robert J. Dambrino III (MSB#5783)
    Attorneys for Defendant Deputy
    Mekedes Coleman

Of Counsel:
Gore, Kilpatrick & Dambrino PLLC
Attorneys at Law
P.O. Box 901
Grenada, MS 38902-0901
Ph.    662.226.1891
Fx.    662.226.2237
Eml.   wpinson@gorekilpatrick.com
Eml.   rdambrino@gorekilpatrick.com

## **CERTIFICATE OF SERVICE**

I, Wesley C. Pinson, one of the attorneys for Defendant, do hereby certify that I served the above and foregoing pleading upon all counsel of record via the Court's ECF/CMF system, which will send notice of filing to all counsel of record.

This the 25th day of March, 2024.

/s/Wesley C. Pinson
Wesley C. Pinson (MSB#106508)